IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAROLD PALMORE,**<br><br>**Plaintiff,**<br><br>V.<br><br>**CLARION UNIVERSITY OF PENNSYLVANIA, CLARION UNIVERSITY POLICE DEPARTMENT, CLARION COUNTY DISTRICT ATTORNEY, KAREN WHITNEY,** Clarion University President, **MATTHEW SHAFFER,** Coordinator of Judicial Affairs and Residence Life, **SHANE WHITE,** Corporal of Clarion University Police Department and **DREW WELSH,** Clarion County District Attorney,<br><br>**Defendants.** | Civil Action No. 2:18-cv-01447-CRE<br><br>**MAGISTRATE JUDGE CYNTHIA REED EDDY**<br><br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S OMNIBUS RESPONSE TO CLARION DEFENDANTS MOTION TO DISMISS

AND NOW COMES the Plaintiff Darold Palmore Pro se, who hereby respectfully submits his Objections to the Clarion Defendant's Motion to Dismiss. Plaintiff does here by incorporate all arguments from the Original/Amended Compliant. For the reasons stated below, Defendants' Motion should be denied.

**I.                          BACKGROUND**

Plaintiff, Darold Palmore, was a sophomore at Clarion University with a strong GPA when he was accused of assaulting his fellow student, Katelyn Hosler, at her dorm room on or about October 6 through the 16th, 2015. Mr. Palmore is a Black male, and Ms. Hosler is a Caucasian female. On November 6th, 2015, Clarion's Vice President of Student Life and University Affairs, Susan Fensk, notified Mr. Palmore by letter that he was immediately suspended from Clarion for allegations that he had violated provisions

set forth in the student handbook. This letter banned Mr. Palmore from campus, effective immediately, and prohibited him from participating in his classes. On November 9th, of 2015, based upon Ms. Hosler's False claim to police, Mr. Palmore was forced to vacate his University residence, pending a University Conduct Board Hearing (hereinafter "UCB").

Matthew Shaffer, an official from Clarion University who would serve as the de facto "prosecutor" of the school's disciplinary process against Mr. Palmore, communicated with Mr. Palmore and Attorney (Andrew Stiffler) via Phone and email. Mr. Shaffer acknowledged and confirmed the postponement of the UCB hearing and furthermore referred Mr. Palmore to Cpl Shane White in regard to any video footage evidence requested. On December 3, 2015, Plaintiff requested video footage of Nair and Wilkinson Hall from Clarion and the University Police that would contradict Ms. Hosler's false allegations and exculpate him. Clarion and the University Police acknowledged Plaintiff's request, however, ignored it. Cpl Shane White in receiving a email requesting video footage from plaintiff, forwards said email to the Clarion County Assistant District Attorney expressing extreme bias. Andrew Stiffler (Attorney) reached out to Cpl White addressing plaintiff's email. Cpl White stated "I won't release any footage without a subpoena". Stiffler then reached out to Clarion University President Karen Whitney concerning Cpl white not providing evidence for the UCB hearing.

On December 11th, 2015 Clarion County District Attorney files criminal charges against Mr. Palmore. He was given failing grades in all of his classes without further explanation and these grades, were placed on his transcript without a UCB hearing being held. On the October of 2016, Plaintiff was tried on Indecent Assault, Harassment and Summary Disorderly Conduct. Mr. Palmore was convicted of Indecent Assault and Harassment following a jury trial. Plaintiff appealed his convictions, and the Superior Court of Pennsylvania granted Plaintiff a new trial on the basis that the trial court misapplied the Rape Shield Law to the extent certain evidence should have been admitted. Id; see also Comm. v. Palmore, 2018 WL 4214202. 195 A.3d 291 (Pa Super. 2018). In June 2019, Plaintiff was re-tried on the sexual assault charges under the parameters of the Superior Court Rape Shield Law ruling. On June 12, 2019, the jury returned a verdict of not guilty. (Am. Compl. at Supplement p. 2). Subsequently, Mr.

Palmore reached out to officials at Clarion, including Defendant Shaffer, to ask if he could schedule a UCB hearing and was denied.

**II.                    Federal Rule of Civil Procedure 12(b)(6)**

For purposes of a motion to dismiss, a court must employ less stringent standards in considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs,* 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution"). Despite this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir. 1996). Finally, the United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim under FED. R. CIV. P. 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). A complaint does not need detailed factual allegations to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

**III.         ARGUMENT**
**III.A.    Clarion University and the University Police Department are NOT entitled to Eleventh Amendment Immunity as to Plaintiff's claims at Counts II through VIII.**

The Clarion Defendants incorrectly assert blanket Eleventh Amendment immunity. Supreme Court precedent in *Ex parte Young*, 209 U.S. 123 (1908), provides a clear exception for ongoing violations of federal law. The Third Circuit has further interpreted this to allow suits against individual officials for injunctive relief, as noted in *MCI Telecommunications Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491 (3d Cir. 2001). This suit seeks such relief, specifically the correction of educational records and actions that continue to affect Mr. Palmore detrimentally.

In response to: "Defendants Whitney, Shaffer and White are entitled to Eleventh Amendment immunity as to the same said claims insofar as they are being asserted against them in their official capacities" On the Amended Complaint See Amended Complaint [ECF 26], and Supplement [ECF 26-1], at §§ I.B. continued Plaintiff also asserts that "**All Defendants are Sued in their Individual and Official Capacity**" Defendants argue immunity from actions taken in their official capacities; however, the complaint articulates actions taken in their personal capacities that fall outside the scope of their official duties. In *Hafer v. Melo*, 502 U.S. 21 (1991), the Supreme Court distinguished between personal-capacity and official-capacity suits, affirming liability for officials acting under color of state law but outside their lawful authority.

Inter Alia: "The whole sense of the passage, in context, is that in order for a supervisor to be liable, a plaintiff must establish a causal link between the supervisor's "sins" (be they sins of omission or commission) and the constitutional injury.

Nevertheless, the Court of Appeals more recently declared in Natale v. Camden County, 318 F.3d 575, 584 (3d Cir. 2003), that a **supervisory policy maker and/or governmental employer** may be liable "where `the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been **deliberately indifferent to** the need.' " (some internal quotation marks omitted). See also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997) ("[o]ur cases have held that `actual knowledge and acquiescence' suffices for supervisory liability because it can be equated with `personal direction' and `direct discrimination by the supervisor.'"), abrogated on other grounds by, Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981)(noting that **"mere acquiescence by police chief when he is on notice of constitutional violations [by his subordinates] is sufficient to trigger liability under section 1983"**) (citing Maclin v. Paulson, 627 F.2d 83, 86 (7th Cir. 1980); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Hence, failure to act on the part of a **supervisory official**, and indeed the failure to act by **any state actor, where the law imposes a duty to act**, such as, for example, where the supervisor has knowledge of the violation, amounts to acquiescence and can form the basis for liability because of the supervisor's own wrongdoing, i.e., the supervisor's failure to act to correct or prevent constitutional wrongs. The instant complaint can be read to sufficiently allege such a scenario.

**III.B.  Plaintiff has alleged the necessary personal involvement of Defendant Whitney in all of the Counts alleged.**

To establish liability under §1983, the allegations in a complaint must demonstrate that a defendant was personally involved, or had **actual knowledge of and acquiesced** to the commission of the wrongdoing. See Rizzo v. Goode, 423 U.S. 362 (1976). *Cf.* [Maclin v. Paulson, 627 F.2d 83, 86 (7th Cir. 1980)](#) **(mere acquiescence by police chief when he is on notice of constitutional violations is sufficient to trigger liability under section 1983).** The whole sense of the passage, in context, is that in order for a supervisor to be liable, a plaintiff must establish a causal link between the supervisor's "sins" (be they sins of omission or commission) and the constitutional injury. Nevertheless, the Court of Appeals more recently declared in [Natale v. Camden County, 318 F.3d 575, 584 (3d Cir. 2003),](#) that a **supervisory policy maker and/or governmental employer** may be liable "where `the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been **deliberately indifferent to** the need.' " (some internal quotation marks omitted). See also [Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997)](#) ("[o]ur cases have held that `actual knowledge and acquiescence' suffices for supervisory liability because it can be equated with `personal direction' and `direct discrimination by the supervisor.'"), abrogated on other grounds by, [Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)](#); [Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981)](#)(noting that **"mere acquiescence by police chief when he is on notice of constitutional violations [by his subordinates] is sufficient to trigger liability under section 1983"**)(citing [Maclin v. Paulson, 627 F.2d 83, 86 (7th Cir. 1980)](#);

[Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976)](#). Hence, failure to act on the part of a **supervisory official**, and indeed the failure to act by **any state actor, where the law imposes a duty to act**, such as, for example, where the supervisor has knowledge of the violation, amounts to acquiescence and can form the basis for liability because of the supervisor's own wrongdoing, i.e., the supervisor's failure to act to correct or prevent constitutional wrongs. The instant complaint can be read to sufficiently allege such a scenario.

In the amended complaint it is stated that I contacted Defendant Whitney and reported concerns of being stonewalled and effectively not being able to procure evidence for my UCB Hearing Defense.

### III.C.  Individual Defendants Whitney, Shaffer and White are NOT entitled to sovereign immunity as to Plaintiff's pendent state law claims, Counts III, IV, V and VI.

Sovereign immunity does not apply when state employees act outside the authorized duties of their employment. A key exception to sovereign immunity occurs when actions are taken in **bad faith or with malice**. In Aliota v. Graham, the Third Circuit considered actions driven by personal motivations as **falling outside** the protection of sovereign immunity. When state officials violate constitutional rights, sovereign immunity often does not protect them, especially in lawsuits **seeking redress for violations of federal statutory rights** under civil rights legislation like Section 1983. The seminal case Hafer v. Melo established that state officials could be held liable in their individual capacities for rights violations, irrespective of any state immunity doctrines.

White: The refusal to Preserve and or Release surveillance footage by Officer Shane White, which was potentially exculpatory evidence for the plaintiff, could be construed as acting in bad faith, particularly since the officer did not inform the plaintiff about the spoliation date of

the footage, which is crucial for a fair defense (University Level, UCB Hearing). Officer White's behavior during an interrogation, where he is described as attempting to intimidate the plaintiff by standing close and not leaving when asked, suggests conduct that may be considered unprofessional and potentially an abuse of power. Officer White's confiscation of a letter provided by the plaintiff and the failure to return it or produce a copy for the plaintiff's records suggests malice or bad faith. This act could have withheld crucial information from the plaintiff, which may have been pertinent to his defense. (University Level, although a Police officer White is still an employee of Clarion University)(All Allegations against White are alleged in all capacities, Individual/Personal, Official (University)+(Police))

Shaffer: The refusal to hold the University Conduct Board (UCB) meeting by Clarion University even after the plaintiff was found not guilty in a criminal trial, demonstrates an intent to deny the plaintiff's right to due process and a fair hearing regarding the university's charges.

Whitney: President Whitney's office being informed about the plaintiff being stonewalled for requesting important evidence and no action seemingly taken to remedy this suggests a deliberate attempt to delay or obstruct the plaintiff's ability to prepare for a hearing. After the plaintiff was acquitted in a criminal trial, the university's refusal, sanctioned by President Whitney, to conduct a University Conduct Board hearing to clear the plaintiff's academic and disciplinary records is viewed as maintaining a wrongful penalty against the plaintiff and denying due process.

### III.D.                                                INCORPORATION

III.D.1. PLAINTIFF incorporates herein as if set forth full arguments made by Plaintiff in County Defendants Omnibus Response

**IV.             CONCLUSION**

In conclusion it is my belief that this case meets all criteria to move forward to discovery and trial. Inter Alia I would like to take this opportunity to move for a Attorney to be allotted. This case is growing beyond my capacity and scope of knowledge.

Respectfully submitted,

s/Darold Palmore

Darold Palmore

Johnstown, PA 15902

Email:DarPalm62@gmail.com