IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAROLD PALMORE,

        Plaintiff,

V.

CLARION UNIVERSITY OF
PENNSYLVANIA, CLARION
UNIVERSITY POLICE DEPARTMENT,
CLARION COUNTY DISTRICT
ATTORNEY, KAREN WHITNEY, Clarion
University President, MATTHEW
SHAFFER, Coordinator of Judicial Affairs
and Residence Life, SHANE WHITE,
Corporal of Clarion University Police
Department and DREW WELSH, Clarion
County District Attorney,
        Defendants.

> Civil Action No. 3:21-cv-00106-CRE
>
> MAGISTRATE JUDGE CYNTHIA REED EDDY
>
> JURY TRIAL DEMANDED

### PLAINTIFF'S OMNIBUS RESPONSE TO COUNTY DEFENDANTS MOTION TO DISMISS

        AND NOW COMES the Plaintiff Darold Palmore Pro se, who hereby respectfully submits his Objections to the County Defendant's Motion to Dismiss. Plaintiff does here by incorporate all arguments from the Original/Amended Compliant. For the reasons stated below, Defendants' Motion should be denied.

I.                           **BACKGROUND**

        Plaintiff, Darold Palmore, was a sophomore at Clarion University with a strong GPA when he was accused of assaulting his fellow student, Katelyn Hosler, at her dorm room on or about October 6 through the 16th, 2015. Mr. Palmore is a Black male, and Ms. Hosler is a Caucasian female. On November 6th, 2015, Clarion's Vice President of Student Life and University Affairs, Susan Fensk, notified Mr. Palmore by letter that he was immediately suspended from Clarion for allegations that he had violated provisions set forth in the student handbook. This letter banned Mr. Palmore from campus, effective immediately, and prohibited him from participating in his classes. On November 9th, of 2015, based upon Ms. Hosler's

False claim to police, Mr. Palmore was forced to vacate his University residence, pending a University Conduct Board Hearing (hereinafter "UCB").

Matthew Shaffer, an official from Clarion University who would serve as the de facto "prosecutor" of the school's disciplinary process against Mr. Palmore, communicated with Mr. Palmore and Attorney (Andrew Stiffler) via Phone and email. Mr. Shaffer acknowledged and confirmed the postponement of the UCB hearing and furthermore referred Mr. Palmore to Cpl Shane White in regard to any video footage evidence requested. On December 3, 2015, Plaintiff requested video footage of Nair and Wilkinson Hall from Clarion and the University Police that would contradict Ms. Hosler's false allegations and exculpate him. Clarion and the University Police acknowledged Plaintiff's request, however, ignored it. Cpl Shane White in receiving a email requesting video footage from plaintiff, forwards said email to the Clarion County Assistant District Attorney expressing extreme bias. Andrew Stiffler (Attorney) reached out to Cpl White addressing plaintiff's email. Cpl White stated "I won't release any footage without a subpoena". Stiffler then reached out to Clarion University President Karen Whitney concerning Cpl white not providing evidence for the UCB hearing.

On December 11th, 2015 Clarion County District Attorney files criminal charges against Mr. Palmore. He was given failing grades in all of his classes without further explanation and these grades, were placed on his transcript without a UCB hearing being held. On the October of 2016, Plaintiff was tried on Indecent Assault, Harassment and Summary Disorderly Conduct. Mr. Palmore was convicted of Indecent Assault and Harassment following a jury trial. Plaintiff appealed his convictions, and the Superior Court of Pennsylvania granted Plaintiff a new trial on the basis that the trial court misapplied the Rape Shield Law to the extent certain evidence should have been admitted. Id; see also Comm. v. Palmore, 2018 WL 4214202. 195 A.3d 291 (Pa Super. 2018). In June 2019, Plaintiff was re-tried on the sexual assault charges under the parameters of the Superior Court Rape Shield Law ruling. On June 12, 2019, the jury returned a verdict of not guilty. (Am. Compl. at Supplement p. 2). Subsequently, Mr. Palmore reached out to officials at Clarion, including Defendant Shaffer, to ask if he could schedule a UCB hearing and was denied.

II.                          **Federal Rule of Civil Procedure 12(b)(6)**

For purposes of a motion to dismiss, a court must employ less stringent standards in considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs,* 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution"). Despite this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir. 1996). Finally, the United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim under FED. R. CIV. P. 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). A complaint does not need detailed factual allegations to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

## III.                                       ARGUEMENT

### III.A.   Defendant Welsh is NOT entitled to prosecutorial immunity on the allegations relating to non preservation or destruction of evidence.

The heart of Plaintiff's argument lies in the defendants' neglect of their constitutional duty to preserve material evidence. In the landmark case of *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Supreme Court highlighted the obligation to preserve evidence that could be **potentially exculpatory**. Under Youngblood, evidence is deemed potentially exculpatory where it "could have been subjected to test, the results of which **might** have exonerated the defendant" Youngblood at 58. (Emphasis added). Despite this, the video footage pivotal to Plaintiff's defense was not preserved, in direct violation of established due process and fair trial protections. Plaintiff unequivocally requested this surveillance footage as part of his defense, a fact communicated to Defendant Welsh through Officer White by email. See email attached. The failure to do so, particularly when this footage was known to **self-delete**, constitutes a due process violation, as was similarly held in *United States v. Jasin*, 280 F.3d 355 (3d Cir. 2002). In the present case, Defendant Welsh, through Officer White, had clear knowledge and control of the video footage, positioning their failure to act within administrative duties unprotected by immunity.

This explicit request imposed a specific duty upon the defendants, Welsh and White to safeguard such evidence, as shown by the Third Circuit's ruling in *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008), where the court distinguished between administrative and advocatory actions, noting that absolute prosecutorial immunity **does not** extend to administrative duties like **evidence preservation**. However, Arizona v. Youngblood introduced the necessity for the defendant to prove bad faith in the non-preservation of **potentially useful evidence**, emphasizing that bad faith hinges on the government's **awareness** of the evidence's apparent exculpatory value at the time of its loss or **destruction**. In this context, Mr. Palmore had informed law enforcement and university staff of the footage's exculpatory significance, thereby fulfilling the requirement to demonstrate the **government's knowledge** of the evidence's value before its destruction. The explicit acknowledgment by Cpl White during the second trial, prompted by ADA Welsh, that the footage could potentially be useful, alongside the evident **bias** and

**refusal** to comply with evidence preservation requests as evidenced by the email from Shane White to the District Attorney's Office, clearly indicates bad faith.

Moreover, *California v. Trombetta*, 467 U.S. 479 (1984), and *United States v. Jasin*, 280 F.3d 355 (3d Cir. 2002), affirm the imperative to preserve evidence that holds significant exculpatory potential. The failure to do so here not only violated Plaintiff's right to a fair trial but was compounded by the decision to allow the footage to self-destruct despite the request for its preservation. This Court should also consider the Third Circuit's decision in *Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir. 2006), which supports the argument that destroying or failing to preserve exculpatory evidence is **outside** the scope of **prosecutorial functions** and thus unprotected by absolute immunity. Furthermore, the actions, or rather inactions, of Welsh and White align with *Munchinski v. Solomon*, where the Third Circuit in 2018 held that **failing to preserve** interview recordings or altering police reports **pre-charge** are investigative and not advocatory, stripping them of absolute immunity.

It is anticipated that Defendants will endeavor to manipulate their case theory by alleging purported misconduct is withholding evidence. It is essential to underscore that to **'withhold'** evidence implies the **existence** of such evidence to be withheld. In this instance, the Defendants **failed to preserve** any evidence; thus, they cannot logically claim that Defendants withheld evidence that does not exist. Therefore, the argument that the evidence was withheld is inherently flawed and should be ignored. Additionally, it is expected that the defense will claim that Welsh was not instructed to preserve evidence. However, the Plaintiff refutes this assertion by directing attention to the email included as an attachment. This email clearly demonstrates that Welsh was not only made aware of the Plaintiff's request to preserve evidence but also informed of potential bias by the affiant. Despite this notification, Welsh failed to take any action. This omission substantiates the Plaintiff's argument that there was a disregard for preserving necessary evidence, which undermines the defense's position. Furthermore, it is anticipated that defendants will argue the allegation in the operative Complaint is that Welsh withheld certain video evidence. Plaintiff points to the last sentence of the amended complaint incorporating all factual allegations, causes of action and statements of claims in their entirety.

Inter Alia "The whole sense of the passage, in context, is that in order for a supervisor to be liable, a plaintiff must establish a causal link between the supervisor's "sins" (be they sins of omission or commission) and the constitutional injury. It would be helpful to have such dictum explicitly clarified. Nevertheless, the Court of Appeals more recently declared in Natale v. Camden County, 318 F.3d 575, 584 (3d Cir. 2003), that a supervisory policy maker and/or governmental employer may be liable "where `the policymaker has **failed to act affirmatively at all**, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " (some internal quotation marks omitted). See also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997) ("[o]ur cases have held that `**actual knowledge and acquiescence' suffices for supervisory liability** because it can be equated with `personal direction' and `direct discrimination by the supervisor.'"), abrogated on other grounds by, Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981)(noting that "**mere acquiescence by police chief when he is on notice of constitutional violations [by his subordinates] is sufficient to trigger liability under section 1983"**)(citing Maclin v. Paulson, 627 F.2d 83, 86 (7th Cir. 1980); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Hence, failure to act on the part of a supervisory official, and indeed the failure to act by any state actor, where the law imposes a duty to act, such as, for example, where the supervisor has knowledge of the violation, amounts to acquiescence and can form the basis for liability because of the supervisor's own wrongdoing, i.e., the supervisor's failure to act to correct or prevent constitutional wrongs. The instant complaint can be read to sufficiently allege such a scenario."

In conclusion, the systematic destruction of evidence directly infringes upon the constitutional guarantees that ensure due process and a fair trial. It is neither just nor lawful to shield such conduct under the guise of prosecutorial immunity. Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss, allowing for a full examination of these critical due process violations.

### III.B.      Plaintiff is NOT Precluded bringing Brady, Trombetta, Youngblood or Due Process Claims.

Collateral estoppel, or issue preclusion, prevents parties from re-litigating identical issues in subsequent legal proceedings that were **fully and fairly** litigated in a previous case. To determine the preclusive effect of a prior state action, we must apply the law of issue preclusion from the adjudicating state: Pennsylvania. *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 357 (3d Cir. 1999). Under Pennsylvania law, issue preclusion applies where: "(1) **an issue decided in a prior action is identical to the one presented in a later action**; (2) **the prior action resulted in a final judgment on the merits**; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) **the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.**" *Adelphia Gateway, LLC v. Pa. Env't Hearing Bd.,* 62 F.4th 819, 826 (3d Cir. 2023) (quoting *Rue v. K-Mart Corp.,* 713 A.2d 82, 84 (Pa. 1998)). Plaintiff refutes this argument on grounds 1,2 and 4.

### 1) an issue decided in a prior action is identical to the one presented in a later action:

The Third Circuit has recognized the importance of contextual differences in determining whether issues are identical for the purposes of collateral estoppel. In Malhan v. SECRETARY US DEPT. OF STATE, 938 F. 3d 453 - Court of Appeals, 3rd Circuit 2019, the Third Circuit considered the importance of context in determining whether issues are identical for purposes of collateral estoppel. The court noted that even superficially similar issues might be distinct based on underlying facts and legal standards. The Supreme Court in Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313 (1971) emphasized the necessity of a **full and fair opportunity** to litigate an issue in the initial proceeding for collateral estoppel to apply. The procedural limitations inherent in the criminal process, particularly concerning discovery rights, restricted the plaintiff's ability to fully explore broader systemic issues relevant to the current § 1983 claim. Plaintiff's limited discovery rights in the criminal process restricted his ability to fully address broader systemic issues now central to the § 1983 claim.

### 2) The prior action resulted in a final judgment on the merits:

The interlocutory appeal concerning the destruction of evidence that Mr. Palmore filed was never decided due to his subsequent acquittal. According to *BNSF Railway Co. v. Loos*, 586 U.S. ___ (2019), for collateral estoppel to apply, a decision on the issue must have been necessary to the judgment. Since Mr. Palmore's appeal was left unresolved, due to his subsequent acquittal and not a conviction, the requisite final judgment on the merits, as articulated by the Third Circuit in *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999), and further clarified in *Adelphia Gateway, LLC v. Pa. Env't Hearing Bd.*, 62 F.4th 819, 826 (3d Cir. 2023), **was not met**. Importantly, the Third Circuit has also highlighted in *Glover v. Cohen*, No. 21-2126 (3d Cir. 2022), that a thorough and definitive conclusion on the issue in previous litigation is necessary for its preclusion in subsequent cases.

4) **The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action:**

Mr. Palmore's appeal regarding the alleged due process violations was never decided, denying him the opportunity to fully litigate his claims. This is underscored by principles laid out in *United States v. Jones*, No. 20-3009 (3d Cir. 2022), emphasizing that collateral estoppel should not apply when the prior adjudication did not encompass a thorough and definitive conclusion on the issue. This lack of resolution is critical in considering the fair application of collateral estoppel as it pertains to Mr. Palmore's opportunity to challenge the evidentiary decisions made during his criminal proceedings.

Given the unique circumstances of this case, including the unresolved nature of the interlocutory appeal and the distinct context of the federal civil rights claims, applying collateral estoppel would improperly limit Mr. Palmore's ability to seek redress for alleged constitutional violations. Therefore, this Court should find that collateral estoppel does not bar Mr. Palmore's federal claims, permitting a full and independent examination of his claims under federal law. This approach ensures a comprehensive and just examination of his claims, upholding the principles of justice under the Constitution.

### III.C.       Plaintiff's argument  that Welsh and White's actions constitute malicious prosecution.

Plaintiff reasserts Malicious Prosecution claim from original complaint.

**III.D.        Plaintiff's constitutional claims are viable against the Defendant District Attorney's Office.**

Defendants assert that the D.A.'s Office is "not an entity amenable to suit under 42 U.S.C. § 1983."  In support of this view, Defendants rely on the following sources of authority *See, (e.g, Shareef v. Moore, 2020 WL 1445878 (W.D. Pa. Mar. 25, 2020), aff'd, 844 F. App'x 487 (3d Cir. 2021) (dismissing DA's Office as a party to a § 1983 claim); see also Brown v. Caulfield, 2021 WL 6498111 (W.D. Pa. Sept. 2, 2021); Wilson v. DeMarchis, 2021 WL 3375421, at n. 4 (W.D. Pa. July 6, 2021); Joobeen v. City of Philadelphia* and *Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997),* and its progeny*) for dismissing the D.A.'s Office as a Defendant in this case.

But contrary to these sources, the D.A.'s Office is a proper party under § 1983. Plaintiffs seeking to impose § 1983 liability on local governments must prove that their injury was caused by **"action pursuant to official municipal policy,"** which includes the decisions of a government's lawmakers, the acts of its policymaking officials, **and practices so persistent and widespread as to practically have the force of law.** *Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611*. **Official municipal policy** includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See *ibid.; Pembaur, supra, at 480-481, 106 S.Ct. 1292; Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)*. These are "action[s] for which the municipality is actually responsible." *Pembaur, supra, at 479-480, 106 S.Ct. 1292*.

In the Palmore case, the consistent testimony from Corporal Shane White regarding his failure to secure and review surveillance footage coupled with the email (declaring plaintiff will get nothing from him) suggests a routine practice or informal policy (Custom) within the District Attorney's Office. This pattern of behavior reflects a systemic issue rather than isolated incidents, indicating a de facto policy. The consistent neglect to utilize available surveillance technology undermines the defendants' ability to challenge the prosecution's case effectively, implicating the due process rights guaranteed by the Fourteenth Amendment. This right to a fair trial, integral to due process, includes the right to present a complete defense, as reinforced by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963), which mandates the disclosure of all exculpatory evidence.

The direct causal link between the informal policy of the District Attorney's Office and potential constitutional violations is evident in the impact such practices have on the fairness of trials. This causal relationship aligns with the requirements set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), where a government entity's policy or custom must be the "moving force" behind the constitutional violation.

Given the severe implications of the alleged policy or practice on the fundamental rights of defendants, it is crucial for the integrity of the judicial system that such claims be thoroughly examined. The amendment of the complaint would allow for a more detailed exposition of the issues and support a more just resolution of the matter, ensuring that all pertinent facts and legal theories are fully considered by the court.

Finally, should the court find any deficiencies in the current presentation of the plaintiff's claims under § 1983, it is respectfully requested that the plaintiff be granted leave to amend the complaint. The purpose of this amendment would be to explicitly articulate the causal link between the identified custom or policy of the District Attorney's Office and the specific constitutional rights infringed in the Palmore case and potentially other similar cases. The amendment would aim to clarify the role of the office's practice in systematically undermining defendants' rights to a fair trial, thereby aligning the claims more closely with the standards set forth in *Monell* and its progeny.


**IV.**                                    **CONCLUSION**

In conclusion it is my belief that this case meets all criteria to move forward to discovery and trial.


Respectfully submitted,

s/Darold Palmore

Darold Palmore

Johnstown, PA 15902

Email:DarPalm62@gmail.com