IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

|  |  |  |
|---|---|---|
| DAROLD PALMORE, | ) | |
| Plaintiff, | ) | Civil Action No.: 3:21-CV-00106-CBB |
| vs. | ) | |
| | ) | United States Magistrate Judge |
| CLARION UNIVERSITY OF | ) | Christopher B. Brown |
| PENNSYLVANIA, CLARION | ) | |
| UNIVERSITY POLICE | ) | |
| DEPARTMENT, KAREN WHITNEY, | ) | |
| CLARION UNIVERSITY | ) | |
| PRESIDENT; MATTHEW SHAFFER, | ) | |
| COORDINATOR OF JUDICIAL | ) | |
| AFFAIRS AND RESIDENCE LIFE; | ) | |
| SHANE WHITE, CORPORAL OF | ) | |
| CLARION UNIVERSITY POICE | ) | |
| DEPARTMENT; DREW WELSH, | ) | |
| CLARION COUNTY DISTRICT | ) | |
| ATTORNEY; AND CLARION | ) | |
| COUNTY, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION[1]**
**ON MOTIONS TO DISMISS ECF Nos. 78 & 80**

**Christopher B. Brown, United States Magistrate Judge**

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

I.   **Introduction**

This civil action was initiated *in forma pauperis* on June 14, 2021 by pro se

Plaintiff Darold Palmore against several Defendants[2] alleging civil rights violations

pursuant to 42 U.S.C. § 1983 and common law tort and contract claims under

Pennsylvania law in connection with how Defendants handled an accusation of

sexual misconduct against Palmore when he was a student at Clarion University.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Presently before the Court are the following:

1. A motion to dismiss Palmore's second amended complaint for failure to
   state a claim pursuant to Fed. R. Civ. P. 12(b)(6) by the County
   Defendants ECF No. 78; and

2. A motion to dismiss Palmore's second amended complaint for failure to
   state a claim pursuant to Fed. R. Civ. P. 12(b)(6) by the University
   Defendants ECF No. 80.

The motions are fully briefed and ripe for consideration. ECF Nos. 79, 81, 86,

87, 88.

For the reasons that follow, the County Defendants' and University

Defendants' motions to dismiss are granted in part and denied in part as follows:

The following claims are dismissed with prejudice:

- Fourteenth Amendment due process claim under 42 U.S.C. § 1983
  (Count II) against all Defendants;

---

[2]      Palmore names the following individuals and entities as Defendants: Clarion University of
Pennsylvania ("Clarion University"), Clarion University Police Department ("University Police"),
Clarion University President Karen Whitney ("President Whitney"), Clarion University Coordinator
of Judicial Affairs and Residence Life Matthew Shaffer ("Administrator Shaffer"), Clarion University
Police Department Corporal Shane White ("Cpl. White") (collectively the "University Defendants"),
and Clarion County Assistant District Attorney Drew Welsh ("ADA Welsh"), and Clarion County (the
"County") (collectively the "County Defendants").  Clarion County was not an original party to this
action and was named in Palmore's second amended complaint filed on September 17, 2024. ECF No.
74.

- Breach of contract claim (Count III) against Defendants Clarion University, President Whitney and Administrator Shaffer;

- Promissory estoppel claim (Count IV) against Defendants Clarion University, President Whitney and Administrator Shaffer;

- Negligence claim (Count V) against Defendants ADA Welsh, Clarion County, Clarion University, University Police, official capacity claims against President Whitney, Administrator Shaffer, Cpl. White;

- Defamation claim (Count VI) against all Defendants;

- Fourth Amendment false arrest / false imprisonment claim under 42 U.S.C. § 1983 (Count VII) against Defendants University Police and Cpl. White; and

- Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 (Count VIII) against University Police and official capacity claims against Cpl. White.

The following claims remain:

- A Title IX claim (Count I) against Defendants Clarion University, University Police, President Whitney, Administrator Shaffer and Cpl. White;

- A Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 (Count VIII) against Defendants ADA Welsh and Cpl. White; and

- A negligence claim (Count V) against Defendants President Whitney, Administrator Shaffer and Cpl. White.

All claims against Clarion County are dismissed with prejudice and this

Defendant shall be terminated from this action.

## II.    Factual Allegations and Procedural History

Palmore alleges in the fall of 2015, while he was a student at Clarion

University, another student allegedly falsely reported to the University Police that

Palmore sexually assaulted her in her dorm room which occurred sometime between

3

October 11 and October 16, 2015. ECF No. 74-1 at ¶¶ II.A.5; ECF No. 79-1 at 2. The female student reported the allegations to Clarion University and the University Police on November 5, 2015 and the next day, Clarion University placed Palmore on an interim suspension and demanded that he vacate campus pending a hearing on the accusations by the University Conduct Board ("UCB"). *Id.* at ¶¶ II.A.5-6. Palmore vacated campus on November 8, 2015. *Id.* at ¶ II.A.8. On November 23, 2015, Clarion University notified Palmore that a UCB hearing for the sexual assault accusations was scheduled for December 4, 2015. *Id.* at II.A.5.; II.A.19; ECF No. 51-1 at 2. But two days prior to the hearing on December 2, 2015, the UCB hearing was postponed at the request of Palmore's legal counsel. *Ibid.*

The day after the UCB hearing was postponed, on December 3, 2015, Palmore requested video surveillance footage from the accuser's dormitory from the University Police for the dates of October 6 through 9, 2015, which Palmore claims includes exculpatory evidence. *Id.* at ¶ II.A.8. Palmore claims he was initially informed by the University that the alleged sexual assault occurred sometime between October 6 through 8, 2015, but later discovered the accuser alleged the sexual assault occurred sometime between October 11 and October 16, 2015. *Id.* at ¶ III.B.1. Palmore claims the surveillance system in which the video was saved automatically overwrote saved videos after 60 days. *Id.* at ¶¶ II.A.9-12. Palmore claims prior to the video being overwritten, he made separate requests to the University Police, Clarion County's District Attorney's Office and President Whitney to preserve and request a copy of the footage, but the video was not

preserved, and the allegedly exculpatory evidence was destroyed on or about December 11, 2015. *Id*. at ¶¶ II.A.9-12.  According to Palmore, he originally requested the video from University Police via Cpl. White who forwarded Palmore's request to the Clarion County District Attorney's Office. *Id*. at ¶ II.A.8.  The District Attorney's Office informed Palmore, through his then-criminal defense attorney, that because there was an ongoing investigation, they would not release any evidence until criminal charges were filed. *Id*. at ¶ II.A.10.  At some point, Palmore also left a message with President Whitney's office to obtain the video footage for his UCB hearing to no avail. *Id*. at II.A.11.  Palmore claims despite his requests to preserve the footage, it was automatically overwritten by the surveillance system and his allegedly exculpatory evidence was destroyed. *Id*. at ¶¶ II.A.9-12.

On December 11, 2015, criminal sexual assault charges were filed against Palmore and he was tried in 2016. *Id*. at ¶ II.A.14.  ADA Welsh[3] prosecuted Palmore and a jury found Palmore guilty. *Id*.  Palmore alleges after the trial, ADA Welsh made unspecified "defamatory statements to the media about" him. *Id*. at ¶ II.A.14.  Palmore appealed the verdict and was granted a new trial on the basis that the trial court misapplied Pennsylvania's Rape Shield Law, 18 Pa. Cons. Stat. § 3104. *Id*.; *Comm. v. Palmore*, 195 A.3d 291 (Pa. Super. 2018).

Upon remand of Palmore's criminal case to the Court of Common Pleas of Clarion County, Pennsylvania, Palmore filed a motion to dismiss the criminal

---

[3]     ADA Welsh became the District Attorney of Clarion County in 2020.  Because during the events relevant to this action, he was an assistant district attorney, the Court will refer to him as such.

charges on the basis that his due process rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady*") (withholding exculpatory evidence) and *Arizona v. Youngblood*, 488 U.S. 51, 68 (1988) ("*Youngblood*") (extending *Brady* principles to the failure to preserve exculpatory evidence) because the dorm video surveillance footage he requested was not preserved and contained potentially exculpatory evidence showing he was not present at the dorm on the date the incident allegedly occurred.[4] ECF No. 79-2.  After briefing and oral argument, the court denied Palmore's motion to dismiss his criminal charges and found Palmore's due process rights were not violated and no *Brady* violation occurred. *Id*. at 6, 13. In denying Palmore's *Brady* violation argument, the court reasoned:

> Here, despite [Palmore's] assertion that the videos would show he was not present at [the accuser's dorm], no one ever viewed the videos and no one, including [Palmore], knows whether they would show that he was not present.  The absence of the video evidence does not undermine the confidence in the outcome of the trial.  Further, the Commonwealth did present sufficient evidence, including the testimony of [the accuser], to establish [Palmore's] guilt beyond a reasonable doubt.  [Palmore] has not proved he was prejudiced.  Therefore, he has not proved that the Commonwealth failed to meet its obligations under *Brady v. Maryland*.

ECF No. 79-2 at 5-6.  Similarly, in denying Palmore's due process violation argument, the court reasoned there was no evidence of bad faith to support such a claim because

---

[4]    The County Defendants attach the state court's decision on Palmore's motion to dismiss his criminal charges for *Brady* violations to its present motion, which this Court can properly consider at this stage. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) (in deciding a motion to dismiss, a court may consider matters of public record and may "take judicial notice of a prior judicial opinion.").

the videos would not have shown the incident itself. There was no
video of the dorm room where the alleged assault occurred. While the
videos, if they existed, may have shown that [Palmore] did not enter
the front or rear doors of the dorm at certain times, they could not have
confirmed that he was not present in [the accuser's] room and did not
assault her there.

ECF No. 79-2 at 10. The court characterized Palmore's argument that the videos

contained exculpatory evidence as "purely speculative." *Id*. at 13. Likewise, the

court found the value of the video footage was not readily apparent to Cpl. White or

the University Police because no one viewed the footage, and an officer does not

commit "bad faith when he does not check for the existence of evidence that is

requested and when the officer does not have actual knowledge of what it shows or

reason to believe what it shows." *Id*. at 11. The court also found the record did not

reflect that the videos requested by Palmore "were disposed of in a calculated effort

to circumvent the disclosure requirements or that there was any official animus

towards [Palmore] or a conscious effort to suppress exculpatory evidence." *Id*. at 11-

12.

In June 2019, Palmore was re-tried on the sexual assault charges and a jury

found him not guilty. ECF No. 74-1 at ¶ II.A.19. Palmore claims that Clarion

University failed to correct his academic transcript or provide him with a UCB

hearing following his acquittal. *Id*.

In June 2021, Palmore initiated this civil action pro se and proceeding *in

forma pauperis* against Defendants and then filed an amended complaint after

Defendants filed motions to dismiss. ECF No. 51-1 at 3. In his amended complaint,

Palmore alleged violations of Title IX and his due process rights, breach of contract,

promissory estoppel, negligence, defamation, false arrest and imprisonment and malicious prosecution. *Id*.  This Court granted two separate motions to dismiss filed by Defendants and dismissed Palmore's claims with prejudice as barred by the applicable statutes of limitations. *Id*.  Palmore appealed this dismissal on all claims except for his defamation claim. ECF No. 79 at 4; ECF No. 86 at 4.  The Court of Appeals for the Third Circuit affirmed dismissal of Palmore's claims for false imprisonment and false arrest as barred by the statute of limitations, but vacated dismissal of Palmore's malicious prosecution, *Brady* due process, Fourteenth Amendment due process, Title IX, negligence and breach of contract claims and found those claims were timely filed and remanded the case to this Court. ECF No. 51-1 at 11.

Upon remand, Defendants renewed their motions to dismiss on grounds raised other than the statute of limitations. ECF Nos. 53, 56.  While Palmore originally responded to those motions, he was later given leave to file a second amended complaint and did so on September 17, 2024. ECF No. 74.  In his second amended complaint, Palmore asserts the following eight claims:

1.    Title IX, 20 U.S.C. § 1681 *et seq*., discrimination claim against Clarion University, University Police, President Whitney, Administrator Shaffer, and Cpl. White (Count I)[5] ECF No. 74-1 at ¶ III.A.1.b;

2.    A "due process" claim for failure to preserve video evidence, which the Court will construe under the Fourteenth Amendment, *Brady* and 42 U.S.C. § 1983 against all Defendants[6] (Count II) *id*. at ¶¶ III.B.1.a – e;

---

[5]    University Defendants do not seek dismissal of Palmore's Title IX claim. ECF No. 81 at 8.

[6]    Notably, Palmore did not reassert his Fourteenth Amendment due process claims related to the University's failure to properly investigate, failure to conduct a UCB hearing or dismissing him

3.    Breach of contract and promissory estoppel claims under Pennsylvania law for failure to comply with the University student handbook in addressing complaints of sexual assault against Clarion University, President Whitney, and Administrator Shaffer (Counts III and IV) *id*. at ¶¶ III.C.1-3; III.D.1-3;

4.    A negligence claim under Pennsylvania law for failure to conduct a fair and impartial investigation into the sexual misconduct allegations in violation of Title IX against all Defendants (Count V) *id*. at ¶¶ III.E.1.a-b;

5.    A defamation claim under Pennsylvania law against all Defendants (Count VI) *id*. at ¶¶ III.F.1-2;

6.    A "false arrest and false imprisonment" claim which the Court will construe under the Fourth Amendment and 42 U.S.C. § 1983 against the University Police and Cpl. White (Count VII) *id*. at ¶¶ III.G.1; and

7.    A malicious prosecution claim for "initiating criminal proceedings against [Palmore] without probable cause" which the Court will construe under the Fourth Amendment and 42 U.S.C. § 1983 against the University Police, Cpl. White and ADA Welsh (Count VIII) *id*. at ¶¶ III.H.1-3.

Defendants renewed their motions to dismiss which are ripe for review.

## III.    Standards of Review

### a.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the

---

from campus and seemingly repackages them into his Title IX claim at Count I. *Compare* ECF No. 51-1 at 6-7 *with* ECF No. 74-1 at Counts I and II.  Those due process claims not reasserted in his second amended complaint are considered abandoned and are summarily dismissed with prejudice. An amended pleading supersedes an original pleading, rendering it a nullity and the "most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).  "[L]iberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam).  "Therefore, as a practical matter, the filing of amended . . . complaints effectively constitutes an abandonment of any prior complaints filed by a plaintiff. *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).

complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The applicable inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. Rule 12(b)(6) works in conjunction with Rule 8, which requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and a complaint can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant has the burden of showing that a complaint fails to state a claim. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (holding modified by *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that [his] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a

claim for relief; (2) peel away allegations that are no more than conclusions and thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

### b. Pro Se Pleadings

Because Palmore was permitted to proceed in this case *in forma pauperis*, the Court is not limited to the arguments presented in the motions to dismiss but may *sua sponte* consider the adequacy of a complaint under the screening provisions of 28 U.S.C. § 1915(e). *Atamian v. Burns*, 236 F. App'x. 753, 755 (3d Cir. 2007)(unpublished) (Section 1915(e)(2)'s screening provisions apply throughout the litigation and "to all *in forma pauperis* complaints, not simply those filed by prisoners.") (citations omitted); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008) (the court may *sua sponte* rest its dismissal upon a ground not raised in a motion to dismiss under the screening provisions of 28 U.S.C. § 1915). Thus, federal courts may dismiss at any time any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Finally, "[a] document filed pro se is 'to be liberally construed,' and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted*); see also Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "pro se litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245. "To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915([e]) both counsel dismissal." *Neitzke*, 490 U.S. at 328 (footnote omitted).

With these standards in mind, the Court now turns to Palmore's second amended complaint and the pending motions to dismiss.

## IV. Discussion

### a. Frivolous Claims

As a preliminary matter, Palmore includes claims in his second amended complaint that are frivolous because they have been previously dismissed with

prejudice, Palmore previously abandoned them, and because Palmore lacks an arguable basis in fact to support them.  The frivolous claims are dismissed as follows:

### i. Defamation (Count VI) against all Defendants

Palmore asserts a conclusory defamation claim against "all Defendants." *See* ECF No. 74-1 at Count VI.  Palmore originally asserted a defamation claim against ADA Welsh which was dismissed with prejudice as time barred. ECF Nos. 42, 43. Palmore did not appeal the dismissal of his defamation claim, and in response to the motion to dismiss "agrees [his] defamation claim against [ADA] Welsh was dismissed [and he] did not intentionally re assert(sic) this claim [and] was attempting to be thorough." ECF No. 86 at 4.  Liberally construing Palmore's second amended complaint, the only facts that tend to support a defamation claim are that following the first criminal trial, ADA Welsh "made defamatory statements to the media about" Palmore. ECF No. 74-1 at ¶ II.A.14.  Given that this claim was already dismissed with prejudice, he failed to raise it on appeal and there are no other allegedly defamatory statements made by any other Defendant in this action, Palmore's defamation claim at Count VI is frivolous as it lacks any arguable basis in law or fact and is dismissed with prejudice as amendment would be futile and inequitable. *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972) (parties cannot amend complaint to include claims previously dismissed with prejudice); *Grayson*, 293 F.3d at 110–11.

### ii. False Arrest / False Imprisonment Claim (Count VII) against the University Police and Cpl. White

Palmore likewise attempts to assert a frivolous and conclusory Fourth Amendment "false arrest / false imprisonment" claim under 42 U.S.C. § 1983 against the University Police and Cpl. White. *See* ECF No. 74-1 at Count VII. Palmore originally asserted false arrest and false imprisonment claims which were dismissed with prejudice as time barred, and the dismissal of these claims was affirmed on appeal. ECF Nos. 42, 43, 51-1 at 4.  Accordingly, Palmore's claims for false arrest and false imprisonment at Count VII are again dismissed with prejudice as frivolous as these claims lack any arguable basis in law. *Gambocz*, 468 F.2d at 840.

### iii. Negligence Claim against County Defendants (Count V)

Palmore asserts a conclusory negligence claim against "all Defendants." *See* ECF No. 74-1 at Count V.  However, the substance of Palmore's negligence claim only includes allegations against the University Defendants and provides no allegations attempting to illustrate how the County Defendants – ADA Welsh and Clarion County – were negligent. *See id.*  The Court previously found that there was insufficient conduct to impute a negligence claim against the County Defendants and refused to construe Palmore's complaint as having asserted such a claim against them. ECF No. 42 at n.3.  Palmore did not appeal this finding.  Accordingly, Palmore's negligence claim as asserted against the County Defendants is frivolous because it lacks any arguable basis in fact and law and is dismissed with prejudice

14

as amendment would be futile.[7] *Gambocz*, 468 F.2d at 840; *Grayson*, 293 F.3d at 110–11.

### b. Due Process Claim (Count II) against all Defendants

Palmore asserts a Fourteenth Amendment due process claim under 42 U.S.C. § 1983 against "all Defendants" for the failure to preserve the allegedly exculpatory video surveillance evidence under *Brady*. Defendants move to dismiss this claim on several grounds by challenging the timeliness of asserting such a claim, the lack of personal involvement and by asserting governmental immunities. Those arguments are addressed below, along with a *sua sponte* analysis of whether Palmore has failed to state a *Brady* due process claim. Whether certain Defendants are entitled to any governmental immunity is addressed separately.

### i. Failure to State a Claim

An action under 42 U.S.C. § 1983 for a due process violation arising from the failure to disclose exculpatory evidence under *Brady* requires a showing that "(1) the evidence at issue is favorable to the accused, because [it is] either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011). Prejudice requires that the evidence's "nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). *See also Smith v. Holtz*, 210 F.3d 186, 197 (3d Cir. 2000) (explaining elements of a *Brady* due

---

[7]    The Court examines this claim against the University Defendants *infra*.

process violation under section 1983 and stating the "prejudice" requirement "for the due process violation" is the "*sine qua non*" of such a claim for relief.); *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).

When a section 1983 due process claim involves the failure to preserve potentially exculpatory evidence, as opposed to the failure to disclose exculpatory evidence a government possesses, such a claim is considered under the Supreme Court's *Youngblood* decision and its "bad faith" requirement. *Youngblood* "establishes the standard for determining whether law enforcement officials have infringed on a defendant's due process rights by failing to preserve "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Unless a criminal defendant can show the failure to preserve the evidence was carried out in bad faith, the "failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*. at 58. Thus, *Youngblood* imposes the added requirement of alleging the failure to preserve the potentially useful evidence was carried out in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (observing when a government fails to disclose material exculpatory evidence, a due process violation occurs regardless of bad faith; but a higher "bad faith" standard is required to find a due process violation for failing to preserve potentially useful evidence). *See also United States v. Ramos*, 27 F.3d 65, 69 (3d Cir. 1994) (considering elements of a *Brady* violation for destroyed evidence before analyzing bad faith of its destruction under *Youngblood*); *Gravely v.*

*Speranza*, 408 F. Supp. 2d 185, 189 (D.N.J. 2006), *aff'd*, 219 F. App'x. 213 (3d Cir. 2007)(unpublished) (interpreting section 1983 due process claim for failure to preserve evidence as a *Brady* claim).

Assuming Palmore has stated a factual basis that Defendants failed to preserve the potentially useful or exculpatory video evidence, he has failed to adequately allege materiality because he was ultimately acquitted of the criminal charges. *See Telzer v. Borough of Englewood Cliffs*, 783 F. App'x 253, 258 (3d Cir. 2019)(unpublished) (dismissing due process claim based on *Brady* because section 1983 plaintiff was acquitted). Section 1983 plaintiffs cannot state a *Brady* due process claim based on government misconduct when they are acquitted of the charges, or the charges are dismissed or withdrawn.[8] *See id.* ("Because Telzer was acquitted of the charges against him, we conclude that no conduct by the defendants has undermined our confidence in the outcome of the trial and thus this case does not implicate *Brady*."); *Rodgers v. Pennsylvania State Police*, No. 1:20-CV-2115, 2024 WL 1333365, at *13 (M.D. Pa. Mar. 28, 2024), *aff'd*, No. 24-1759, 2025 WL 560624 (3d Cir. Feb. 20, 2025), *amended*, No. 24-1759, 2025 WL 729496 (3d Cir. Mar. 7, 2025), and *aff'd*, No. 24-1759, 2025 WL 729497 (3d Cir. Mar. 7, 2025); *Frameli v. Singer*, 2:19-CV-00331, 2020 WL 475750, at *3 (W.D. Pa. Jan. 29, 2020); *McCue v. Twp. of Hanover*, No. 2:19-CV-934, 2020 WL 2476039, at *5 (W.D. Pa. Apr. 15, 2020), *report and recommendation adopted*, 2020 WL 2475757 (W.D. Pa.

---

[8]    The Court acknowledges that Palmore's circumstances present a closer question than the cited cases as he was convicted, at least initially, but later acquitted at retrial. Nonetheless, the Court finds no significant reason to depart from the reasoning of other courts which found a failure to allege materiality upon acquittal for a *Brady* due process violation under section 1983.

May 13, 2020).  Based on his acquittal, the absence of the video surveillance footage "did not undermine the confidence in the outcome" of the criminal proceedings and does not support a due process claim under *Brady*. *Frameli,* 2020 WL 475750, at *2–3.  Accordingly, Palmore's *Brady* due process claim against "all Defendants" for the failure to preserve the allegedly exculpatory video evidence (Count II) is dismissed with prejudice as amendment would be futile. *Gorrio v. Francis*, --- F.4th ---, ---, No. 24-1711, 2025 WL 1669417, at *3 (3d Cir. June 13, 2025)(courts may deny leave to amend a complaint when a plaintiff had previous opportunities to amend a complaint because the delay in seeking amendment becomes undue).

### ii. Timeliness and Failure to State a Claim against Clarion County

Even if Palmore had stated a valid *Brady* due process claim, he has failed to state such a claim against Clarion County for the separate reason that he alleged no facts from which it can be reasonably inferred that Clarion County violated his due process rights under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Palmore named Clarion County as a defendant for the first time in his second amended complaint filed on September 17, 2024.  Palmore's second amended complaint does not appear to assert any specific allegations against Clarion County but includes it as a defendant under his due process claim stemming from the alleged failure to provide him with the allegedly exculpatory video footage. *See* ECF No. 74-1 at Count II.

Clarion County argues Palmore's due process claim against it must be dismissed as barred by the applicable statute of limitations. ECF No. 79 at 8. Clarion County argues the two-year statute of limitations for Palmore's due process claim began accruing on June 12, 2019, the day he was acquitted of the criminal charges, and he failed to assert any claims against Clarion County until September 2024, more than five years after his acquittal. *Id.*

Palmore responds that his due process claim against Clarion County is not time barred because his second amended complaint relates back to the original complaint and there is no prejudice to Clarion County. ECF No. 86 at 3-4.

The statute of limitations for a due process claim under 42 U.S.C. § 1983 arising in Pennsylvania is two years. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). The statute of limitations accrues and begins to run "when the wrongful act or omission results in damages" allowing a plaintiff to "file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388; 391 (2007) (cleaned up).

Palmore initiated this action by submitting a complaint and an application to proceed *in forma pauperis* on June 14, 2021. The Court granted his application to proceed *in forma pauperis* and directed service of the complaint on June 16, 2021. It is undisputed that Palmore did not name Clarion County as a defendant in his original complaint, but named the Clarion County District Attorney's Office as a defendant. *See* ECF No. 4 at ¶ 8. Palmore's due process claims accrued when he was acquitted of the underlying charges on June 12, 2019 and had until June 14,

2021 to file his due process claims. *See* ECF No. 51-1 at 6. Because Palmore did not

file his amended complaint naming Clarion County until September 17, 2024, more

than three years after the statute of limitations expired, Palmore's claims against

Clarion County are time barred unless Palmore's second amended complaint relates

back to the date of his original complaint. Fed. R. Civ. P. 15; *Cienciva v. Brozowski*,

No. 3:20-CV-2045, 2022 WL 2791752, at *6 (M.D. Pa. July 15, 2022) ("amending a

pleading to append a new defendant after expiration of the limitations period is

ineffective unless the amendment relates back to the date that the original

complaint was filed.").

Fed. R. Civ. P. 15(c)(1) provides the framework to consider when an amended

complaint relates back to the date of an original pleading:

**(c) Relation Back of Amendments.**

**(1) When an Amendment Relates Back**. An amendment to a
pleading relates back to the date of the original pleading when:

> **(A)** the law that provides the applicable statute of limitations
> allows relation back;
>
> **(B)** the amendment asserts a claim or defense that arose out of
> the conduct, transaction, or occurrence set out--or attempted to
> be set out--in the original pleading; or
>
> **(C)** the amendment changes the party or the naming of the
> party against whom a claim is asserted, if Rule 15(c)(1)(B) is
> satisfied and if, within the period provided by Rule 4(m) for
> serving the summons and complaint, the party to be brought in
> by amendment:
>
> > **(i)** received such notice of the action that it will not be
> > prejudiced in defending on the merits; and

> **(ii)** knew or should have known that the action would
> have been brought against it, but for a mistake
> concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).  "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003).  The "touchstone" of this analysis is whether the "would-be defendants had fair notice of the claim within the limitations period." *SEPTA v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 348-49 (3d Cir. 2021) (cleaned up).

Clarion County does not respond to Palmore's relation back argument in its reply brief and it is unclear whether the Clarion County District Attorney's Office is an agency of Clarion County sufficient to confer notice of Palmore's due process claims against Clarion County as set forth in his original complaint.  Nevertheless, the Court need not address this issue because Palmore has failed to state a due process claim against Clarion County.

Clarion County is a municipal entity and can only be liable for Palmore's section 1983 due process claims under the standards set forth in *Monell*, 436 U.S. 658.  In *Monell*, the Supreme Court of the United States held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government as an entity is responsible. *Id.* at 694.  The facts alleged must plausibly show that the municipality was the moving force of a constitutional

violation. *Id.*  Importantly, under section 1983, municipalities are only responsible for "their own illegal acts," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original), and cannot be held liable for the unconstitutional acts of its employees based on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

Thus, to plead municipal liability under *Monell*, Palmore must allege (1) he possessed a constitutional right of which he was deprived; (2) Clarion County had a policy or custom; (3) the policy or custom 'amount[ed] to deliberate indifference' to that constitutional right; and (4) the policy or custom was the 'moving force behind the constitutional violation.'" *Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (*quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).  The policy or custom can either be a formal policy, where a "decisionmaker with final authority 'issues an official proclamation, policy, or edict," *Williams v. Ponik*, 822 F. App'x 108, 112 (3d Cir. 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)), or an "informally adopted" custom; *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 690). Palmore must show a "direct causal link" between the policy and/or custom and his "constitutional deprivation." *Kramer v. City of New Kensington*, No. 13-CV-606, 2015 WL 5672640, at *13 (W.D. Pa. Sept. 25, 2015) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249–50 (3d Cir. 2007)).  "To satisfy the pleading standard, [Palmore] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). And Palmore must sufficiently allege how "the policy or custom was the 'proximate

cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

In the absence of a policy or custom, a municipality can be held liable for constitutional violations that arise from its failure to train, supervise or discipline its employees where that failure "reflects a deliberate or conscious choice." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001). This requires sufficient allegations that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Palmore has alleged no facts from which it can be reasonably inferred that Clarion County had a policy or custom that violated his constitutional rights or that its failure to train, supervise or discipline its employees violated his constitutional rights. Aside from naming Clarion County as a defendant in the caption, and by virtue of its inclusion into Palmore's due process claim as asserted against "all Defendants," there are no facts alleged against Clarion County. The crux of Palmore's due process claim is related to the failure to preserve video footage on Clarion University's campus. *See* ECF No. 74-1 at Count II. Palmore has alleged no facts from which it can be reasonably inferred that Clarion County had a policy or custom of not preserving video evidence or that it failed to train, supervise or discipline its employees related to the preservation of video evidence and those

policies, customs or failures caused Palmore's alleged due process violation. Without such allegations, Palmore merely seeks to hold Clarion County responsible for the alleged due process violation of its employees under a theory of *respondeat superior*, which he cannot do. Palmore admits as such in his response by arguing his due process claim against the County is based on "the conduct of [ADA] Welsh [which] reflects an unofficial policy or practice rather an isolated misconduct." ECF No. 86 at 10. Accordingly, Palmore's second amended complaint fails to state a due process claim upon which relief can be granted against Clarion County and is dismissed.

Typically, when dismissing a claim for failure to state a claim, a court "must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Amendment is futile when the amendment would fail to state a claim upon which relief could be granted, *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010), and inequitable when there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson*, 293 F.3d at 108. Delay becomes undue when a plaintiff "has had previous opportunities to amend a complaint." *Gorrio*, 2025 WL 1669417, at *3 (cleaned up). Palmore has twice amended his complaint and has failed to include any allegations against Clarion County despite having known of the basis of his due process claims since the inception of this litigation and has failed to identify any defensible reasons for not including these claims sooner. Allowing Palmore a "'do over' to assert new legal theories and permutations of [his]

prior claims that [he] could have asserted much earlier" would be inequitable.

*Goldfish Ship., S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 641 (E.D. Pa.

2009), *aff'd*, 377 Fed. Appx. 150 (3d Cir. 2010)(unpublished).  Moreover, it is clear

he bases his due process claim against Clarion County on a *respondeat superior*

theory and attempts to impute the alleged unconstitutional conduct of ADA Welsh

to Clarion County, making amendment of this claim futile.  Accordingly, for this

additional reason, Palmore's due process claim against Clarion County is dismissed

with prejudice as amendment would be inequitable and futile.

### iii.  Personal Involvement of President Whitney

Even if Palmore stated a valid *Brady* due process claim, he has failed to state

such a claim against President Whitney for the separate reason that he alleged no

facts from which it can be reasonably inferred that she was personally involved in

violating his due process rights.

Palmore asserts a Fourteenth Amendment due process claim under 42 U.S.C.

§ 1983 for failure to preserve video evidence (Count II) against President Whitney.

ECF No. 74-1 at ¶¶ III.B.1.a. – e.  She moves to dismiss this claim arguing Palmore

has not asserted the necessary personal involvement required to state such a claim.

ECF No. 81 at 8-11.   In response, Palmore does not address his due process claim,

but argues that President Whitney was sufficiently involved in violating his rights

under Title IX (Count I) under a supervisory liability standard. ECF No. 87 at 6-7.

Notwithstanding Palmore has failed to adequately allege a due process claim, he

has separately failed to allege President Whitney's personal involvement in any

alleged constitutional violation.  It is well-established that an individual defendant in a section 1983 action "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (*quoting Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Besides asserting his due process claim against "all defendants," and thus asserting this claim against President Whitney by default, Palmore's second amended complaint is devoid of factual allegations indicating that President Whitney had any personal involvement in his alleged due process violation. *See* ECF No. 74-1 at ¶ III.B.  Palmore seemingly conflates the supervisory liability standard for liability under section 1983 to attach to a constitutional violation and his Title IX claim. ECF No. 87 at 6-7.  Palmore's second amended complaint is likewise devoid of any allegations indicating President Whitney participated in his alleged due process violation related to the video footage or established a policy, custom or practice that allegedly caused him harm. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Accordingly, for this separate reason, Palmore's due process claim (Count II) against President Whitney is dismissed with prejudice as amendment would be futile. *Phillips*, 515 F.3d at 236.

### c. Breach of Contract (Count III) against Clarion University, President Whitney and Administrator Shaffer[9]

Palmore maintains that the Clarion University Student Handbook is a contract and asserts a breach of contract claim against Defendants Clarion University, President Whitney and Administrator Shaffer for failing to comply with the Student Handbook's policies and procedures addressing complaints of sexual misconduct, conducting investigations of such complaints and governing sexual misconduct proceedings. ECF No. 74-1 at ¶ III.C.2.

To state a breach of contract claim under Pennsylvania law, a plaintiff must sufficiently plead (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *Gorski v. Smith*, 2002 PA Super 334, 812 A.2d 683, 692 (2002).  Courts have consistently held that a student handbook between a public university and its students is not an enforceable contract under Pennsylvania law. *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (student handbook of a public university was not a contract between the university and the student and dismissing breach of contract claim); *Crabtree v. California Univ. of Pennsylvania*, 606 A.2d 1239, 1240 n. 3 (Pa. Commw. Ct. 1990); *Pandit v. Temple Univ.*, No. 24-CV-1475, 2025 WL 388818, at *2 n. 2 (E.D. Pa. Feb. 4, 2025); *Cohn v. Pennsylvania State Univ.*, No. 19-CV-2857, 2020 WL 2770684, at *7 (E.D. Pa. May 28, 2020); *Carroll v. Millersville*

---

[9]      While the University Defendants largely move to dismiss Palmore's breach of contract claim based on sovereign immunity, they also argue no contractual relationship exists under the Student Handbook. ECF No. 81 at 14.  The Court may *sua sponte* dismiss at any time any cause of action that does not state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

*Univ. of Pennsylvania*, No. 16-CV-1406, 2019 WL 2423268, at *8 (E.D. Pa. June 6, 2019); *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013); *Johnson v. Temple Univ. of Commw. Sys. of Higher Educ.*, No. 12-CV-515, 2013 WL 5298484, at *13 (E.D. Pa. Sept. 19, 2013); *Bradshaw v. Pennsylvania State Univ.*, No. 10-CV-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011).

While the relationship between a student and a privately funded college is strictly contractual in nature, the relationship between a student and a public university is governed by due process principles. *Tran*, 986 A.2d at 183 (citing *Boehm v. Univ. of Pennsylvania Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990)). It is undisputed that Clarion University is a public university and Palmore cannot assert a breach of contract claim against it based on the Student Handbook. 24 Pa. Stat. Ann. § 20-2002-A(a)(4). Likewise, Palmore cannot assert a breach of contract claim based on the Student Handbook against President Whitney and Administrator Shaffer, because the Student Handbook does not establish a contractual relationship and public university employees "cannot be held personally liable for an alleged breach of contract by their principal." *Borrell*, 955 F. Supp. 2d at 408 (cleaned up) (public university's department chair and program director could not be held individually liable for breach of contract claims related to the student-plaintiff's expulsion based on a university handbook). Accordingly, Palmore's breach of contract claim (Count III) against Clarion University, President

Whitney, and Administrator Shaffer is dismissed with prejudice, as amendment

would be futile. *Gorrio*, 2025 WL 1669417, at *3.

### d. Promissory Estoppel (Count IV) against Clarion University, President Whitney and Administrator Shaffer

Palmore asserts a claim for promissory estoppel under Pennsylvania law

against Clarion University, President Whitney and Administrator Shaffer. ECF No.

74-1 at ¶¶ III.D.1-3.  In support of his claim, Palmore, *in toto*, alleges the following:

> Plaintiff believes that Clarion's Student Handbook serves as a binding
> contract that Clarion has materially breached multiple provisions
> therein relating to the sexual misconduct proceeding in this case.
> However, in the event the Court were to find that no such contract
> exists, Clarion, through but not limited to its regulations, standards,
> procedures, and policies, made representations to Plaintiff,
> independent of any expressed contractual promises, that Clarion
> expected or should have expected would induce Plaintiff to apply to
> and continue to enroll at the University.  Clarion expected or should
> have expected Plaintiff to accept its offer of admission and incur the
> tuition, fees, and costs necessary for enrollment based on the
> University's regulations, standards, procedures, and policies.  Plaintiff
> relied on Clarion's expressed and implied promises that he would not
> be discriminated against by the University and would be afforded the
> aforementioned rights set forth in the Student Handbook.  Plaintiff
> justifiably relied on Clarion's express and implied promises to his
> detriment, as Clarion failed to adhere to its regulations, standards,
> procedures, and policies and did, in fact, discriminate against him with
> the rights set forth in the Student Handbook. As a direct, proximate,
> and readily foreseeable consequence of Clarion's and the University
> Police's numerous material breaches, Plaintiff has sustained
> significant damages, including but not limited to, having a pending
> academic and/or disciplinary record(s) that improperly includes a
> notation indicating he committed a sexual misconduct, harassment,
> and/or other related offenses. This negative mark on Plaintiff's record
> inhibited his ability to enroll in a similarly ranked and esteemed
> college or university and stigmatizes Plaintiff as he maintains a
> pending notation on his record for a conduct he did not commit.
> Plaintiff has also suffered monetary damages, loss of educational

opportunities, emotional distress, and other direct and consequential damages.

ECF No. 74-1 at ¶¶ III.D.1-3. While Palmore does not explicitly state what provisions of the Student Handbook support his promissory estoppel claim[10], drawing inferences elsewhere from his second amended complaint, it appears he is complaining that (1) he was discriminated against in violation of Clarion University's policy to not discriminate against its students on the basis of a protected class; and (2) the University failed to give him a UCB hearing in violation of its policy to hold such a hearing. ECF No. 74-1 at ¶¶ II.A.16 – 17. Palmore does not explicitly cite to any University policy with respect to the timeframe in which Clarion University must conduct such a hearing. Attached to his second amended complaint is a document labeled "Guide to Clarion University Judicial Policy" dated 2015-2016. ECF No. 74-2. Assuming this document accurately reflects Clarion University's applicable policies, therein it describes the rules of procedure for UCB hearings and provides for "reasonable specific advanced written notice of charges" of

---

[10]    Palmore also complains that the University policies would not afford him the ability to "fully and completely defend himself" at the hearing because he would not be provided with legal counsel, would not be permitted to cross-examine the accuser, and a "preponderance of the evidence" standard would apply to determine whether he violated the Student Code. ECF No. 74-1 at ¶¶ II.A.18. The Court questions Palmore's standing to challenge these policies because he was never given a hearing, and thus never deprived of his ability to "fully and completely defend himself" because of the policies he describes. It is unclear whether Palmore suffered any injury from policies that were not enforced or applied to him. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (standing requires an injury-in-fact that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"); *Short v. New Jersey Dep't. of Educ.*, No. 23-CV-21105, 2025 WL 984730, at *10 (D.N.J. Mar. 28, 2025) (plaintiff lacked standing where school district policy was not applied to her and "her mere perception of harm [was] insufficient to confer standing."). Notwithstanding his suspected lack of standing, Palmore has failed to adequately allege a promissory estoppel claim based on the aforementioned University policies because the allegations involve "broad and vague implied" promises that do not support such a claim and has not adequately alleged how he relied on those policies to his detriment. *C & K Petroleum Products, Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988).

alleged misconduct, "reasonably advanced written notice of the date, time, and place of the hearing," and "a reasonably sufficient interval between the date of notification of charges and the date of the hearing[.]" ECF No. 74-2 at p. 24.

To state a claim for promissory estoppel under Pennsylvania law, a plaintiff must allege (1) "the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee"; (2) "the promisee actually took action or refrained from taking action in reliance on the promise;" and (3) "injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). "For the first element, the promise must be an express promise and the allegation of a 'broad and vague implied promise' would not suffice." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 475 (E.D. Pa. 2019) (*quoting C & K Petroleum Products, Inc.*, 839 F.2d at 192).

Palmore's promissory estoppel claim fails for several reasons. First, Palmore does not include sufficient factual allegations to support his claim and only provides vague and conclusory allegations of "discrimination" and "policies" and simply recites the elements of a promissory estoppel claim. *See e.g.*, ECF No. 74-1 at ¶¶ III.D.1-3 ("Plaintiff relied on Clarion's expressed and implied promises that he would not be discriminated against by the University and would be afforded the aforementioned rights set forth in the Student Handbook. Plaintiff justifiably relied on Clarion's express and implied promises to his detriment, as Clarion failed to adhere to its regulations, standards, procedures, and policies and did, in fact, discriminate against him with the rights set forth in the Student Handbook.").

31

Next, Clarion University's policies to not discriminate and to hold a disciplinary hearing with a reasonable amount of time do not constitute an express enforceable promise that would reasonably induce reliance.  Other courts have likewise rejected promissory estoppel claims based on statements made in university handbooks and policies of impartiality, fairness and nondiscrimination or conducting fair, orderly or expeditious disciplinary hearings. *See Doe v. Rider Univ.*, No. 3:16-CV-4882, 2020 WL 634172, at *15-*16 (D.N.J. Feb. 4, 2020) (dismissing promissory estoppel claim based on promises made in university policies and separate promises made by university administration that it would follow university policies related to non-discrimination and disciplinary hearings for student accused of sexual misconduct); *Doe v. Univ. of Chicago*, No. 16-CV-08298, 2017 WL 4163960, at *10 (N.D. Ill. Sept. 20, 2017) (dismissing promissory estoppel claim based on promises made in university's student manuals related to, inter alia, non-discrimination and to provide a "prompt, fair, impartial and thorough investigation and resolution" and adjudication in cases of alleged sexual misconduct because the policies were not "definite enough to constitute [] unambiguous promise[s]."); *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017) (university student handbook that included a statement that the chair of the hearing panel was "responsible for conducting a fair, orderly, and expeditious hearing" was not a "clear and unambiguous promise that would reasonably induce reliance" and did not state a claim for promissory estoppel). Similarly here, the statements in the University's policy to not discriminate against

its students and to hold a misconduct hearing within a reasonable amount of time are broad and vague implied promises that do not amount to express enforceable promises that would reasonably induce reliance.

Finally, Palmore has failed to adequately allege what action he took or refrained from taking in reasonable reliance on these policies. His reference that the policies induced him to apply to and continue to enroll at Clarion University is too vague to support this element. *See e.g.*, *Pandit*, 2025 WL 388818, at *2–3 (finding allegations that student repeated a first-year curriculum based on a university policy to count only the highest grades for repeated classes was too vague to support she took that action in reliance on the university's policy).

Palmore has therefore failed to state a claim for promissory estoppel against Clarion University, President Whitney and Administrator Shaffer and this claim will be dismissed with prejudice as amendment would be futile. *Gorrio*, 2025 WL 1669417, at *3.

### e. Malicious Prosecution Claim (Count VIII) against ADA Welsh: Collateral Estoppel[11]

Palmore asserts a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 against ADA Welsh in connection with his alleged failure to preserve and disclose video evidence. ECF No. 74-1 at Count VIII. ADA Welsh argues that Palmore is collaterally estopped from asserting any claim based on the failure to preserve video evidence because this exact question was litigated during Palmore's

---

[11]    The County Defendants also move to dismiss Palmore's due process claim (Count II) on the basis of collateral estoppel. Because that claim has been dismissed, this argument will only be considered as to Palmore's malicious prosecution claim (Count VIII).

criminal proceeding and the state court found that no *Brady* violation or due process violation occurred because the video evidence was not exculpatory. ECF No. 79 at 9-11. Palmore responds that collateral estoppel should not apply because his "interlocutory appeal regarding the alleged due process violations was never decided, denying him the opportunity to fully litigate his claims." ECF No. 86 at 6.

Collateral estoppel, or issue preclusion, "prohibits relitigation of an issue that has been fully and fairly litigated previously." *Karns v. Shanahan*, 879 F.3d 504, 514 n.3 (3d Cir. 2018). Issue preclusion requires a federal court gives a state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Defendants in a section 1983 action can assert collateral estoppel as a defense any state court decision on constitutional claims raised in state court criminal proceedings. *Allen v. McCurry*, 449 U.S. 90 (1980).

To determine whether issue preclusion applies in a subsequent section 1983 action to issues decided in the course of state court criminal proceedings, the court must look to Pennsylvania law. *Hart v. Tarrant*, No. 19-3782, 2021 WL 3204844, at *2 (3d Cir. July 29, 2021). Under Pennsylvania law, the party attempting to apply collateral estoppel must establish the following four elements:

> (1) An issue decided in a prior action is identical to one presented in a later action;
>
> (2) The prior action resulted in a final judgment on the merits;

(3) The party against whom collateral estoppel is asserted was a party
to the prior action, or is in privity with a party to the prior action; and

(4) The party against whom collateral estoppel is asserted had a full
and fair opportunity to litigate the issue in the prior action.

*Hart v. Tarrant*, No. 19-3782, 2021 WL 3204844, at *2 (3d Cir. July 29, 2021)

(cleaned up).

Palmore takes issue with the fourth element arguing that he was not

provided a full and fair opportunity to litigate his due process claims because he

was acquitted of the charges and was unable to fully appeal the state court order

denying the motion to dismiss his criminal charges.

No Pennsylvania court has directly addressed whether pre-trial decisions in a

prior criminal proceeding have any preclusive effect in a subsequent civil rights

action when the defendant is acquitted.  Several federal courts applying

Pennsylvania law have determined collateral estoppel does not apply to suppression

decisions in a prior criminal proceeding resulting in an acquittal because appellate

review of the suppression decision is not available and does not give a "full and fair"

opportunity to litigate under the fourth issue preclusion factor. *Campbell v. Balon*,

No. 4:16-CV-00779, 2017 WL 2880856, at *6 (M.D. Pa. July 6, 2017); *Thomas v.

Stanek*, No. 2:14-CV-1415, 2015 WL 757574, at *6 (W.D. Pa. Feb. 23, 2015); *Gass v.

Murphy*, No. 3:11-CV-1584, 2013 WL 5488712, at *4 (M.D. Pa. Sept. 30, 2013); *Kline

v. Hall*, No. 1:12-CV-1727, 2013 WL 1775061, at *3–4 (M.D. Pa. Apr. 25, 2013). *See

also James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir.

2006) (citing accord. *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991)) ("the

35

ability to appeal an adverse ruling is indispensable to a finding that there existed a full opportunity to litigate the issue."). In other words, "whenever the need to appeal the trial court's adverse pretrial ruling is mooted by an acquittal, a plaintiff (former criminal defendant) is not precluded from relitigating the trial court's pretrial ruling in his [section] 1983 action." *Thomas v. Stanek*, No. 2:14-CV-1415, 2015 WL 757574, at *6 (W.D. Pa. Feb. 23, 2015) (collecting cases). *But see Spisak v. Edelstein*, 768 A.2d 874, 877 (Pa. Super. 2001) ("preclusion under collateral estoppel principles does not require that the litigant take every avenue to challenge and appeal a decision; rather, all that is required is that the issue was decided in prior litigation, that that decision became final, and that the party against whom the doctrine is asserted had a 'full and fair opportunity to litigate' the issue in the prior litigation.").

While the state court decision that County Defendants argue has preclusive effect here did not involve a suppression motion, as the several cited federal cases did, the same reasoning applies. Palmore was acquitted following the second jury trial and though it appears he appealed the decision denying his motion to dismiss the criminal charges on due process grounds, his acquittal rendered his appeal moot. As a result, he did not have a full and fair opportunity to litigate the due process or probable cause issues and is not precluded from litigating those issues in connection with his malicious prosecution claim here.

Accordingly, the County Defendant's motion to dismiss is denied in this respect.

36

### f. Malicious Prosecution Claim (Count VIII) against ADA Welsh: Absolute Immunity[12]

ADA Welsh argues that he is entitled to prosecutorial immunity for Palmore's malicious prosecution claim related to the handling of the video evidence. ECF No. 79 at 12. Palmore responds that prosecutorial immunity does not extend to administrative duties like evidence preservation. ECF No. 86 at 8.

Common-law immunities like absolute and qualified immunities apply to constitutional claims brought under section 1983. *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020). While public officials, like prosecutors, are usually only entitled to qualified immunity, certain public officials are entitled to absolute immunity when they "perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006); *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). A functional approach is used to determine the immunity of a prosecutor and focuses on the nature of the function perform and not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (*quoting Burns v. Reed*, 500 U.S. 478, 486 (1991)).

---

[12]    ADA Welsh also argues that he is entitled to absolute immunity for Palmore's due process claim (Count II), but because that claim has been dismissed, this argument will only be considered as to Palmore's malicious prosecution claim (Count VIII).

When a prosecutor performs acts in a "quasi-judicial role" like "soliciting . . . testimony from witnesses in grand jury proceedings and probable cause hearings," "initiating a prosecution," "preparing for the initiation of judicial proceedings or for trial, conducting a trial, and presenting evidence to a judge[,]" or for the preparing and filing of charging documents and arrest warrants, the prosecutor is entitled to absolute immunity. *Burns*, 500 U.S. at 479, 491–92; *Imbler*, 424 U.S. at 431; *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992); *Rose v. Bartle*, 871 F.2d 331, 343 (3d Cir. 1989). Absolute immunity does not extend, however, to "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208. This is because "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (cleaned up). "Determining the precise function that a prosecutor is performing is a fact-specific analysis[,]" and courts are cautioned against deriving "bright-line rules" for its application and instead must "preserve the fact-based nature of the inquiry." *Fogle*, 957 F.3d at 160 (cleaned up).

In deciding whether a prosecutor is entitled to absolute immunity at the motion to dismiss stage, "it is the [prosecutor's] conduct as alleged in the complaint that is scrutinized." *Id.* at 161 (cleaned up). "To earn the protections of absolute immunity at the motion-to-dismiss stage, a [prosecutor] must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." *Weimer*

*v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020) (*quoting Fogle*, 957 F.3d at 161).  The court must analyze two factors, first determining "what conduct forms the basis for the plaintiff's cause of action" and next determining "what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Fogle*, 957 F.3d at 161 (*quoting Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011)).

In support of his malicious prosecution claim, Palmore claims that on December 3, 2015, ADA Welsh was forwarded Palmore's request to preserve the dorm video surveillance footage containing allegedly exculpatory evidence from Cpl. White and Administrator Shaffer and took no steps to preserve the evidence. ECF No. 74-1 at ¶ III.B.1.d.  Palmore claims ADA Welsh "filed charges" against him on December 11, 2015 without probable cause and after the footage had been erased. *Id*. at III.B.1.e.; III.H.2.c.

"A prosecutor's knowing failure to preserve exculpatory evidence is not entitled to absolute immunity because it is not part of the prosecutorial function." *Munchinski v. Solomon*, 747 F. App'x 52, 57 (3d Cir. 2018) (unpublished) (*citing Henderson v. Fisher*, 631 F.2d 1115, 1120 (3d Cir. 1980) (per curiam)).  The only conduct that connects ADA Welsh to the video footage is that he was forwarded a request by Palmore to preserve the video footage and failed to act upon that request.  While Palmore does not claim that ADA Welsh independently investigated the criminal charges, and there is little to infer that the video footage contained exculpatory evidence or that ADA Welsh knowingly failed to preserve it, at this

stage, it is unclear what function ADA Welsh served in this regard and whether he is entitled to absolute immunity. Accordingly, the County Defendant's motion to dismiss is denied without prejudice in this respect and they may reassert this argument with the benefit of a completed record.

> **g. Eleventh Amendment Immunity for Clarion University, University Police and "Official Capacity" Claims against President Whitney, Administrator Shaffer and Cpl. White (Counts II through VIII)[13]**

Clarion University and the University Police argue they are entitled to immunity under the Eleventh Amendment for Palmore's section 1983 due process claim (Count II), breach of contract claim (Count III), promissory estoppel claim (Count IV), negligence claim (Count V), defamation claim (Count VI), and section 1983 malicious prosecution claim (Count VIII). ECF No. 81 at 5-8. Likewise, President Whitney, Administrator Shaffer and Cpl. White ("the individual University Defendants") argue that all claims made against them in their "official capacities" should be dismissed under the Eleventh Amendment's immunity provision. *Id.* at 8. Palmore responds that the Eleventh Amendment does not apply to his request for injunctive relief to correct his educational records. ECF No. 87 at 5. The Court agrees that Clarion University, the University Police and all claims made against the individual University Defendants in their official capacities are entitled to Eleventh Amendment immunity.

---

[13]    As set forth above, Palmore's Fourteenth Amendment due process claim under 42 U.S.C. § 1983 (Count II), breach of contract claim (Count III), promissory estoppel claim (Count IV), and defamation claim (Count VI) are dismissed with prejudice for failure to state a claim. Notwithstanding, Clarion University, the University Police and individual University Defendants named in their official capacities are also entitled to immunity for these claims under the Eleventh Amendment.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Eleventh Amendment immunity bars lawsuits against a state in federal court, unless one of three exceptions applies: (1) Congress specifically abrogated the immunity; (2) the state waives its own immunity; or (3) claims are made against state officials "in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law[,]" also referred to as the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908); *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001).  Congress has not abrogated Eleventh Amendment immunity in enacting 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  Pennsylvania has not waived its Eleventh Amendment immunity from suit in federal court and has explicitly withheld consent to suit in federal court. 42 Pa. Cons. Stat. § 8521(b) ("[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

As for Palmore's claims against Clarion University and the University Police, Eleventh Amendment immunity extends to state agencies, instrumentalities or arms of the state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  Courts

have consistently extended Eleventh Amendment immunity to members of the Pennsylvania State System of Higher Education ("PASSHE") which includes fourteen component universities. *Skehan v. State Sys. of Higher Educ.*, 815 F.2d 244, 247–49 (3d Cir. 1987); 24 Pa. Stat. Ann. § 20-2002-A.  Clarion University is a member of PASSHE and is therefore immune from suit in federal court under the Eleventh Amendment. 24 Pa. Stat. Ann. § 20-2002-A(a)(4); *Obotetukudo v. Clarion Univ. of Pennsylvania*, No. 13-CV-0639, 2015 WL 1524460, at *15 (W.D. Pa. Apr. 2, 2015).  Likewise, the University Police is a department of Clarion University and afforded immunity under the Eleventh Amendment. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (Eleventh Amendment immunity extends to "suits against departments or agencies of the state having no existence apart from the state."); *McClaine v. Pold*, No. 2:12-CV-00619, 2012 WL 3096060, at *2 (W.D. Pa. July 30, 2012) (affording Eleventh Amendment immunity to Clarion University Department of Public Safety).

As for Palmore's official capacity claims against the individual University Defendants, "[i]ndividual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).  This is because "a claim against an officeholder of the Commonwealth of Pennsylvania in his official capacity essentially is a claim against the Commonwealth itself, and such suits are barred by Eleventh Amendment immunity." *Harr v. Buczak*, No. 21-CV-1555, 2024 WL 4064139, at *4 (W.D. Pa. Sept. 5, 2024).

42

Claims made against departments or agencies of the state or those made against state employees sued in their official capacities are barred by Eleventh Amendment immunity "regardless of [whether] the relief sought" is monetary or equitable in nature, *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985); *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993), and the immunity extends to "state-law claims brought into federal court under pendent jurisdiction." *Pennhurst*, 465 U.S. at 121 ("a claim that state officials violated state law in carrying out their official responsibilities is . . . protected by the Eleventh Amendment."). *See also Allen v. New Jersey State Police*, 974 F.3d 497, 505 (3d Cir. 2020).[14]

To the extent, however, that Palmore invokes the *Ex parte Young* doctrine for prospective injunctive relief to correct his educational record under his federal claims asserted against the individual University Defendants, the Eleventh Amendment does not categorically bar such a claim for relief, University Defendants make no argument whether Palmore's relief is properly characterized as prospective, and the University Defendants' motion is denied in this discrete respect.

---

[14]    As explained below, Pennsylvania has only waived its sovereign immunity for certain negligent acts, none of which apply here. 1 Pa. Cons. Stat. § 2310; 42 Pa. Cons. Stat. § 8522.  While there is still an open question as to the individual University Defendants' sovereign immunity by virtue of their scope of employment for Palmore's negligence claim, "[t]he 'scope of authority' inquiry pertains to Commonwealth officials and employees, not entities[,]" and Clarion University and the University Police are also entitled to sovereign immunity for Palmore's negligence claim, and this claim is properly dismissed with prejudice as to those Defendants. *Vance v. Cheyney Univ. of Pennsylvania*, No. 1751 C.D. 2017, 2018 WL 6424137, at *7 (Pa. Commw. Ct. Dec. 7, 2018).

Therefore, all claims against Clarion University, the University Police, and the official capacity claims against the individual University Defendants are barred by Eleventh Amendment immunity and are dismissed with prejudice as amendment would be futile (Counts II, III, IV, V, VIII).[15] *Alston v. Kean Univ.*, 549 F. App'x 86, 89 (3d Cir. 2013) (*citing Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009)) (affirming dismissal of claims barred by the Eleventh Amendment with prejudice because amendment would be futile).

### h. Negligence Claim (Count V) against President Whitney, Administrator Shaffer and Cpl. White: Sovereign Immunity[16]

Palmore asserts a state law negligence claim against the individual University Defendants in connection with the investigation and handling of the sexual assault allegations. ECF No. 74-1 at Count V.  The individual University Defendants argue Palmore's state law claims are barred by sovereign immunity claiming that they acted in the course and scope of their employment with respect to these claims. ECF No. 81 at 11-16.  Palmore responds that the individual University Defendants were not acting within the scope of their employment because their actions were motivated by malice or bad faith. ECF No. 87 at 9-10.

Officials and employees of the Commonwealth of Pennsylvania, like President Whitney, Administrator Shaffer and Cpl. White, are entitled to sovereign

---

[15]    Except for Palmore's request for injunctive relief to correct his educational records under his remaining federal claims asserted against the individual University Defendants.

[16]    University Defendants argue they are entitled to sovereign immunity for all of Palmore's state law claims for breach of contract (Count III), promissory estoppel (Count IV), negligence (Count V) and defamation (Count VI).  Because all claims except for Palmore's negligence claim have been dismissed on other grounds, the Court will only consider this argument with respect to Palmore's negligence claim.

immunity for acts committed within the scope of their employment and are immune in both their official and individual capacities from suits arising from those acts. 1 Pa. Cons. Stat. § 2310; *Talley v. Pennsylvania Dep't. of Corr.*, No. 19-CV-1589, 2024 WL 1253626, at *11 (E.D. Pa. Mar. 21, 2024); *Kull v. Guisse*, 81 A.3d 148, 154 (Pa. Commw. Ct. 2013) ("An officer or employee of a state-owned educational institution is a Commonwealth employee[]" entitled to sovereign immunity). Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. § 2310. The exceptions to sovereign immunity must "be narrowly construed." *Dean v. Commonwealth, Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000).

As for Palmore's negligence claim, the Pennsylvania General Assembly has waived sovereign immunity for certain causes of action arising from the negligent acts of state employees in very limited circumstances, including: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. Cons. Stat. § 8522. Palmore's negligence claim against President Whitney is that she "had a duty to properly train and supervise her employees and agents regarding the investigation and handling of Title IX complaints, ensuring adherence to due

process and the preservation of exculpatory evidence." ECF No. 74-1 at ¶ III.E.1.b.1. While Palmore does not explicitly name Administrator Shaffer or Cpl. White in his negligence claim, the conduct alleged against these Defendants is that they ignored Palmore's request to preserve video surveillance footage containing allegedly exculpatory evidence. Assuming these allegations are recognized negligence claims, none of this conduct falls into the limited circumstances for which the Pennsylvania General Assembly has waived sovereign immunity.

Notwithstanding that Palmore's negligence claim does not fall into an enumerated exception to sovereign immunity, the individual University Defendants are not entitled to sovereign immunity if they acted outside the scope of their employment. Whether a state employee acted within the scope of their employment for sovereign immunity to apply is analyzed under state law and is an affirmative defense that can be decided at the motion to dismiss stage only where the facts and inferences drawn therefrom are not in dispute. *Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019).

President Whitney, Administrator Shaffer and Cpl. White argue they were acting within the scope of their employment because Palmore alleged in his original complaint that "Clarion" and the "University Police" were "acting through its agents, servants, workmen, employees, . . . who were acting in the course and scope of their respective agency and/or in the promotion of Clarion's business interest[,]" and Palmore incorporated his original complaint into his operative complaint. ECF No. 81 at 12. The individual University Defendants further argue: "investigation of

46

an alleged criminal incident occurring on campus and the subsequent referral and processing of that incident to and through the university discipline process would appear to be of the kind that the Clarion Defendants were employed to perform. The complained of actions occurred substantially within the authorized time and space limits for each respective Clarion Defendant and it appears that these actions were motivated almost entirely by a desire to serve the University." *Id*.

Palmore responds that Cpl. White acted in bad faith and outside of the scope of his employment when he failed to preserve the video footage after Palmore requested it and called Palmore's request "crap" and stated Palmore "is getting nothing from me," Administrator Shaffer was "motivated by malice" when he refused to hold a UCB hearing or "clear" Palmore's academic and disciplinary record after he was acquitted of the criminal charges, and President Whitney neglected her duties when Palmore informed her office he was having difficulty obtaining the video footage and she took no action. ECF No. 87 at 8-9.

In Pennsylvania, a state official's conduct is within the scope of their employment when it is "of the same general nature as that authorized or incidental to the conduct authorized, occur[s] substantially within the authorized time, and done to serve the employer." *Robertson v. Zaken*, 271 A.3d 543 (Pa. Commw. Ct. 2021). The individual University Defendants' argument that investigating criminal incidents on campus and processing that incident through the university disciplinary process "would appear to be of the kind [of conduct] that the [individual University] Defendants were employed to perform" is conclusory, ambivalent, and

47

insufficient for the Court to determine as a matter of law at this stage that their conduct falls within the scope of their employment. Accordingly, the University Defendants' motion to dismiss is denied without prejudice in this respect and they may reassert this argument with the benefit of a completed record.

## V.    Conclusion

Based on the foregoing, Defendants' motions to dismiss are granted in part and denied in part. The following claims are dismissed with prejudice:

- Fourteenth Amendment due process claim under 42 U.S.C. § 1983 (Count II) against all Defendants;

- Breach of contract claim (Count III) against Clarion University, President Whitney and Administrator Shaffer;

- Promissory estoppel claim (Count IV) against Clarion University, President Whitney and Administrator Shaffer;

- Negligence claim (Count V) against ADA Welsh, Clarion County, Clarion University, University Police, official capacity claims against President Whitney, Administrator Shaffer and Cpl. White;

- Defamation claim (Count VI) against all Defendants;

- Fourth Amendment false arrest / false imprisonment claim under 42 U.S.C. § 1983 (Count VII) against University Police and Cpl. White; and

- Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 (Count VIII) against University Police and official capacity claims against Cpl. White.

The following claims remain:

- A Title IX claim (Count I) against Defendants Clarion University, University Police, President Whitney, Administrator Shaffer and Cpl. White;

- A Fourth Amendment Malicious prosecution claim under 42 U.S.C. § 1983 (Count VIII) against Defendants ADA Welsh and Cpl. White; and

- A negligence claim (Count V) against Defendants President Whitney, Administrator Shaffer and Cpl. White.

All claims against Clarion County are dismissed with prejudice and this

Defendant shall be terminated from this action.

An appropriate Order follows.


DATED this 8th day of July, 2025.


                          BY THE COURT:


                          s/Christopher B. Brown
                          United States Magistrate Judge