IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAROLD PALMORE,<br><br>Plaintiff,<br><br>V.<br><br>CLARION UNIVERSITY et al,<br><br>Defendants. | Civil Action No. 3:21-CV-00106-CBB<br><br>MAGISTRATE JUDGE: CRISTOPHER B. BROWN<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN SUPPORT OF RECONSIDERATION**

Plaintiff, Darold Palmore, appearing pro se, respectfully moves this Honorable Court to reconsider its July 8, 2025 Memorandum Opinion and Order (ECF No. 90), which dismissed with prejudice Plaintiff's claims. This motion is submitted pursuant to **Federal Rules of Civil Procedure 59(e) and 60(b)(1).** Reconsideration is warranted on multiple grounds, including: (1) clear error of law in applying governing precedent; (2) inadvertent misapprehension or omission of factual allegations incorporated across Plaintiff's pleadings; and (3) to prevent manifest injustice stemming from the dismissal of viable constitutional and tort claims at the pleadings stage. Relief is also proper under Rule 60(b)(1), based on mistake or oversight concerning the factual record, applicable law, and incorporation methodology used throughout Plaintiff's amended pleadings.

**I.          LEGAL STANDARD**

Under Rule 59(e), courts may grant reconsideration to rectify manifest errors of law or fact, account for newly discovered evidence, or prevent manifest injustice. See Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Rule 60(b)(1) authorizes relief from a final

judgment where a party demonstrates "mistake, inadvertence, surprise, or excusable neglect." See Fed. R. Civ. P. 60(b)(1); see also Prides Litig., Inc. v. Advisory Comm. on Appellate Rules, 235 F.3d 182 (3d Cir. 2000). Judicial error of fact or law may fall within the scope of Rule 60(b)(1). Because this Court's sua sponte dismissal was with prejudice and without affording leave to amend—despite Plaintiff's pro se status—reconsideration under either rule is not only proper but essential to prevent injustice.

## II. GROUNDS FOR RECONSIDERATION
### II.A. HONORABLE BROWN'S MOTIONS PRACTICE RULES
#### II.A.1. Rule 12 Motions

Defendant's motion to dismiss under Rule 12(b)(6) fails to comply with Magistrate Judge Brown's Chambers Practices, which require a good-faith certification of meet-and-confer. Because defendant did not include this certification, the motion is non-compliant and should be stricken. Further, as no proper Rule 12 motion has been filed, plaintiff requests a final opportunity to amend under Rule 15(a)."

### II.B. NEGLIGENCE
#### II.B.1. The Court Overlooked Factual Allegations Naming ADA Welsh and Clarion County

In dismissing Count V, the Court determined that Plaintiff failed to allege specific facts connecting ADA Welsh or Clarion County to negligent conduct. Respectfully, this finding misapprehends key allegations in the Second Amended Complaint (SAC) and incorporated materials. Plaintiff pled, inter alia:

- On December 3, 2015, Plaintiff requested the preservation of dormitory surveillance video from Officer Shane White and Administrator Matthew Shaffer (SAC ¶ II.A.8);

- Officer White forwarded the request to the Clarion County District Attorney's Office, specifically alerting ADA Welsh to the existence and relevance of the evidence;

- No steps were taken to preserve the requested evidence, which was automatically destroyed by or around December 11, 2015 (SAC ¶¶ II.A.10–12).

These factual allegations are not speculative; they are well-supported by attached exhibits and cross-referenced within the SAC. The oversight or misreading of these allegations resulted in the erroneous conclusion that Count V lacked factual foundation—an error that clearly falls within Rule 60(b)(1) and satisfies the criteria for Rule 59(e) relief.

### II.B.2.    Plaintiff's Incorporation-by-Reference Was Permissible and Misunderstood

Each cause of action within Plaintiff's Second Amended Complaint incorporates the factual allegations of the preceding sections by express reference. Count V (Negligence) builds on Count II (Due Process / Brady), which includes critical facts concerning the County's failure to preserve exculpatory evidence. This incorporation approach is lawful. See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 567 (3d Cir. 2002). Nonetheless, Plaintiff acknowledges that greater clarity could have aided the Court in tracing incorporated facts across claims. Plaintiff respectfully requests that, should the Court deem incorporation-by-reference insufficient to satisfy Rule 8 pleading standards, leave to amend be granted under Rule 15. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519 (1972) (pro se pleadings must be construed liberally and in favor of sufficiency).

### II.B.3.    Pennsylvania Law Recognizes Negligence in This Context

Under Pennsylvania law, a public official who receives timely notice of the need to preserve evidence, and fails to act, may be liable for the resulting harm. See K.H. v. Kumar, 122 A.3d 1080, 1097 (Pa. Super. Ct. 2015). Plaintiff alleged that ADA Welsh was explicitly put on notice regarding material video evidence central to Plaintiff's defense and due process rights. His failure to act foreseeably resulted in the destruction of that evidence, contributing to Plaintiff's criminal conviction and reputational harm. These facts meet the elements of duty, breach,

causation, and harm—essential to any negligence claim under Pennsylvania tort law. His inaction directly contributed to the loss of that evidence and Plaintiff's resulting harm. This supports a colorable negligence claim.

### II.B.4.  County Defendants' Dismissal Contradicts and Circumvents the Third Circuit Mandate

The Third Circuit's ruling in Palmore v. Clarion Univ., No. 23-1045 (3d Cir. 2023), vacated the prior dismissal of Plaintiff's negligence claim and remanded for further proceedings. The district court, in bundling claims against University and County Defendants for purposes of judicial economy, inadvertently tied their fates. As a result, the Third Circuit's remand—though facially directed at the University Defendants—logically extended to Clarion County and ADA Welsh. To the extent the remand intended further proceedings on the merits of negligence claims, the current dismissal circumvents that intent.

Plaintiff therefore submits that dismissal of the County Defendants now either (1) violates the mandate's underlying logic or (2) prematurely disposes of a claim that appellate review deemed non-frivolous. Either interpretation supports vacatur of the dismissal and reinstatement of Count V, or in the alternative, leave to replead At Minimum, Plaintiff Should Be Granted Leave to Amend

If the Court finds the allegations in Count V unclear or insufficiently specific, Plaintiff respectfully requests leave to amend. The Third Circuit has held that pro se litigants should generally be granted leave to amend unless it would be **clearly futile**. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Plaintiff does not want to add new facts, but properly plead his intention. Plainly, Plaintiff believes he has properly plead Negligence on behalf of ADA

Welsh and the County due to the 14th Amendment Due Process / Brady allegation. Plaintiff also believes he properly plead Negligence for all University Defendants. Plaintiff intended the incorporation by paragraph to transplant actions from preceding causes to later pled causes there by triggering the present clause. For instance it is Plaintiffs belief that if you transplant the Factual Allegations section or Title IX claim facts under Due Process, Breach of contract, Promissory Estoppal, Negligence etc all those claims would be satisfied.

**II.C.**       **DUE PROCESS**
**II.C.1.   <u>The Court Misapplied the Brady Materiality Standard by Overweighting Plaintiff's Acquittal</u>**

The Court concluded that Plaintiff failed to establish "materiality" under *Strickler v. Greene*, 527 U.S. 263 (1999), because Plaintiff was ultimately acquitted. But Plaintiff was first convicted in the Court of Common Pleas of Clarion County. The lack of video evidence—which Plaintiff consistently alleged would have been exculpatory—was central to both the pretrial motions and trial defense. Materiality under *Strickler* turns not on the final outcome, but on whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 280. The Third Circuit has made clear that "materiality is judged in light of the suppressed evidence considered collectively." *Breakiron v. Horn*, 642 F.3d 126, 135 (3d Cir. 2011).

Here, Plaintiff's first trial ended in a conviction despite assertions that video existed that would have supported his innocence. The prejudice stems from the harm suffered due to that conviction—reputation, incarceration, and long-term consequences ( status on Megans Law)— not solely from the fact of acquittal at retrial. The loss of the footage meant that Plaintiff had no opportunity to introduce objective exculpatory evidence in either proceeding. The dismissal

conflated the *Brady* and *Youngblood* frameworks and presumed that an acquittal automatically nullifies a due process violation. However, numerous courts—including the Supreme Court—have held that Brady violations can still be material even when the outcome is later remedied, particularly when the violation results in pretrial prejudice or wrongful conviction. See *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *United States v. Agurs*, 427 U.S. 97, 103–104 (1976).

### II.C.2.       Plaintiff Adequately Alleged Bad Faith Under Youngblood

The Court cited *Arizona v. Youngblood*, 488 U.S. 51 (1988), to require that Plaintiff plead "bad faith" by law enforcement in failing to preserve the video footage. Respectfully, Plaintiff's Second Amended Complaint and prior pleadings provide facts supporting a plausible inference of bad faith.

Specifically, Plaintiff alleged:

- He was falsely accused by a student informant who had a motive to lie.
- University police were aware of security camera footage that could have conclusively disproved the allegations.
- Plaintiff and his defense counsel requested the footage early in the process.
- Defendant White in email refused to release or preserve footage when requested and required by law.
- Defendant ADA Welsh, with knowledge of these facts, declined to preserve or produce the footage.
- No legitimate explanation was offered for the destruction of the video.

As the Third Circuit noted in *United States v. Ramos*, 27 F.3d 65, 69 (3d Cir. 1994), bad faith may be inferred from the deliberate failure to preserve evidence that the government knows the defense is seeking. This is even more true when the government's stated reason for failing to preserve evidence is vague, inconsistent, or entirely absent. These allegations are more than

conclusory; they form a pattern of official indifference that justifies discovery. Plaintiff merely asks that he be allowed to prove bad faith through evidence and depositions—not that he meet an evidentiary burden at the pleading stage.

### II.C.3.  The Court Misapprehended the Standard for Supervisory Liability Under § 1983 in Dismissing President Whitney

In dismissing the due process claim against former Clarion University President Karen Whitney, the Court found that Plaintiff "failed to allege President Whitney's personal involvement" and that Plaintiff's arguments appeared to "conflate supervisory liability under § 1983 with Title IX." Respectfully, Plaintiff asserts that this finding overlooks key factual allegations and misapplies the pleading standard for supervisory liability under *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004), and *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), rev'd on other grounds, 575 U.S. 822 (2015).

Plaintiff's Second Amended Complaint and prior pleadings clearly assert that:

- Clarion University had a campus-wide security surveillance system under the direction of the university administration.

- The university's preservation or deletion of surveillance video evidence relevant to campus incidents fell under the purview of upper administration, including the Office of the President.

- The video system in question was centrally managed and preserved according to campus policy that would not exist — and could not be ignored — without institutional knowledge and tolerance by the President's Office.

- Whitney, as President, had final authority over campus disciplinary policies, video retention policies, and decisions affecting the preservation of critical evidence in student disciplinary and criminal matters.

The Court correctly noted that a § 1983 claim cannot be based solely on respondeat superior. However, Plaintiff did not rely on that theory. Rather, he alleged that Whitney had **"knowledge of and acquiescence in"** the failure to preserve evidence, or alternatively, **"established policies or customs that caused the deprivation of Plaintiff's constitutional rights."** These allegations, when liberally construed, are sufficient to withstand dismissal. See *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Moreover, the Third Circuit has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs," but that such involvement can be shown by **"participation or actual knowledge and acquiescence."** *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997). Plaintiff respectfully submits that the Court erred by applying a heightened pleading standard inconsistent with *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), which instructs that a pro se complaint must be liberally construed, and that even a "short and plain statement" suffices where it provides notice of the claim.

In sum, Plaintiff pleaded that Karen Whitney, as President of Clarion University, oversaw or permitted policies and practices that led to the deletion or non preservation of video evidence vital to his defense. Whether she knew, approved, or deliberately disregarded this conduct is a question of fact — not an issue of law to be decided on a motion to dismiss. Therefore, Plaintiff respectfully requests that this Court reconsider its dismissal of Count II as to President Whitney or, in the alternative, allow Plaintiff leave to amend.

**II.D.**             **BREACH OF CONTRACT CLAIM (Count III)**

### II.D.1. **The Court Misapplies the "Non-Contractual" View of Public University Handbooks**

It is acknowledged that, under Pennsylvania law, student handbooks from public universities are generally not construed as contracts. See Tran v. State Sys. of Higher Educ., 986 A.2d 179, 183 (Pa. Commw. Ct. 2009). The Supreme Court has similarly affirmed that education at a public institution does not automatically create a contractual relationship. See Board of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 92 (1978). However, both the Supreme Court and the Third Circuit recognize that courts must examine whether the university's conduct, language, and policy materials give rise to an implied-in-fact contract or enforceable obligations under promissory estoppel or quasi-contract theories.

Indeed, the Supreme Court in *Perry v. Sindermann*, 408 U.S. 593, 601 (1972), held that "[a]lthough a mere subjective 'expectancy' is not protected by due process, a 'legitimate claim of entitlement' to a benefit arises from rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." In *Perry*, the Court specifically allowed a teacher's claim to proceed where a "de facto tenure system" could have created enforceable expectations even in the absence of formal contract.

Applying that principle, the Third Circuit in *Mauriello v. UMDNJ*, 781 F.2d 46, 50 (3d Cir. 1986), found that a university's failure to follow its own procedural handbook in dismissing a student raised legitimate due process and contractual concerns. Likewise, in *Gorman v. University of Rhode Island*, 837 F.2d 7, 12–13 (1st Cir. 1988), the First Circuit held that where a public university promulgates specific disciplinary procedures and then fails to follow them, students may have a viable contract claim.

Courts evaluating student handbook claims must therefore distinguish between "aspirational" language and concrete, mandatory policies. As one court explained: "A student handbook may constitute part of a valid contract where the terms are sufficiently definite and evidence an intent to be bound." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 593 (D. Mass. 2016).

Thus, while Clarion is correct in asserting the general proposition that handbooks do not create contracts per se, that argument fails when the university's policies go beyond precatory language and instead reflect enforceable procedures. Plaintiff's breach of contract claim arises not from generic expectations, but from Clarion's express promises in its Handbook and SRRP—documents replete with mandatory procedures governing the investigation and adjudication of sexual misconduct claims.

II.D.2.       **Clarion's Student Handbook Contained Specific Promises**

Clarion's Handbook includes explicit, definitive commitments to:

- Provide a fair, impartial, and prompt disciplinary hearing;
- Preserve evidence relevant to disciplinary hearings;
- Prohibit discrimination and guarantee equal opportunity in the administration of its rules;
- Prohibit waiver of hearings in sexual misconduct cases (Student Handbook, Ex. A, at 24, 32, 35);

Plaintiff did not merely assume procedural protections—he relied upon clear, mandatory policies that governed the disciplinary process. Clarion's failure to follow its own rules—including the refusal to conduct a University Conduct Board (UCB) hearing, destruction of surveillance footage despite express requests, and denial of Plaintiff's access to an impartial adjudicative process—constituted a breach of those express promises.

**II.D.3.** **Plaintiff's Reliance and Resulting Damages Were Substantial**

Plaintiff was suspended, barred from classes, lost academic standing, and was branded as an alleged sexual assailant—all without access to exculpatory video footage or a disciplinary hearing, in direct violation of Clarion's mandatory policies. These damages are not speculative. They are real, quantifiable, and traceable to Clarion's contractual breach. See Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000) (detrimental reliance on clear promises supports breach and estoppel claims).

**II.D.4.** **Clarion's Handbook Forms a "Quasi-Contract" Relationship at Minimum**

Even if the Court finds that the Handbook is not a contract per se, Plaintiff's claim survives under a theory of promissory estoppel. Clarion induced students to rely on its procedural policies by requiring compliance and conditioning student status on adherence to its terms. Plaintiff relied on these representations in remaining enrolled, submitting to procedures, and cooperating with the university's process—only to be denied the rights Clarion promised. See Borrell v. Bloomsburg Univ., 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013) (recognizing promissory estoppel where student relied on university assurances).

**II.D.5.** **Parallel Due Process Violations and Constitutional Dimensions**

The procedural guarantees contained in Clarion's Handbook were not only contractual in effect—they implicate constitutional due process rights. Under Goss v. Lopez, 419 U.S. 565, 574 (1975), public universities may not suspend or expel students without providing due process, which includes notice and a meaningful opportunity to be heard. When a university outlines specific procedures for adjudication and then fails to honor them, this deviation itself constitutes a violation of due process. Plaintiff was not afforded a University Conduct Board hearing. He

was denied access to evidence. He was excluded from classes and publicly disciplined without adherence to the stated procedures in Clarion's own code of conduct. These are more than breaches of school policy—they are constitutional violations, actionable under 42 U.S.C. § 1983. See *Monroe v. Pape*, 365 U.S. 167 (1961) (remedy for deprivations of constitutional rights under color of state law).

### II.D.6.   Individual Liability: President Whitney and Administrator Shaffer

Plaintiff does not argue that university employees are liable for breach of contract under a respondeat superior theory. Rather, Plaintiff's Second Amended Complaint pleads that President Whitney and Administrator Shaffer acted outside the scope of their authority and with deliberate indifference to Plaintiff's rights. Specifically:

- President Whitney was directly informed of the refusal to provide video evidence and failed to intervene (SAC ¶ II.A.11);
- Administrator Shaffer collaborated with Officer White to withhold evidence, in violation of university rules (SAC ¶ II.A.8);

Such conduct, when performed with bad faith and outside the scope of employment, is actionable. See Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984) (public employees may be liable for actions violating constitutional or statutory duties beyond administrative function). In conclusion Plaintiff respectfully requests that the Court reconsider its dismissal of Count III. Clarion University created and disseminated procedural rules with the intent and expectation that students would rely upon them. Plaintiff did so to his detriment. At a minimum, the question of whether these rules gave rise to enforceable obligations under contract, estoppel, or constitutional doctrines is a mixed question of law and fact, unsuited to dismissal at the

pleadings stage. Accordingly, Plaintiff requests that Count III be reinstated, or in the alternative, that leave to amend be granted

### II.E. PROMISSORY ESTOPPEL
#### II.E.1. Clarion's Promises were Specific, Relied Upon and Breached

The Court dismissed Count IV on the grounds that (1) Clarion's statements were "broad and vague implied promises" that could not form the basis for promissory estoppel, and (2) Plaintiff failed to allege concrete action taken in reasonable reliance. Respectfully, Plaintiff believes this analysis omitted key components of his Second Amended Complaint, especially:

- The direct incorporation of the **Brady due process violation** and non-preservation of evidence into the promissory estoppel theory; and

- The existence of **clear and specific procedural assurances** made in Clarion's disciplinary policies and handbooks that Plaintiff relied upon when enrolling, remaining enrolled, and participating in the disciplinary process.

To state a claim for promissory estoppel under Pennsylvania law, a plaintiff must allege: (1) a promise that the promisor reasonably should expect to induce action or forbearance; (2) actual and reasonable reliance; and (3) injustice that can only be avoided by enforcement. *Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000)*. Clarion University made **specific procedural promises** through its 2015–2016 Student Rights, Regulations, and Procedures (SRRP), including but not limited to: Formal Hearings, Conduct of Hearing, Use of Evidence. These provisions show that Clarion expected students to rely on its structured process. Plaintiff relied on these stated procedures when applying to, enrolling in, and remaining at Clarion.

#### II.E.2. The Brady Violation itself confirms Reliance and Detriment

The Court's opinion appears to treat the alleged violations as hypothetical harms disconnected from any enforceable promise. However, Plaintiff's reliance is demonstrated most

clearly by the very facts underlying the Brady violation: Clarion, through its policies and agents, failed to preserve key exculpatory video evidence from its own campus surveillance system. Clarion failed to preserve requested dormitory lobby and elevator surveillance footage—evidence central to Plaintiff's defense. Plaintiff explicitly requested this footage. Clarion's failure to produce or preserve it violated both Plaintiff's constitutional rights and its own written procedures. The harm caused by this failure included:

- Tarnished academic and disciplinary record,
- Emotional distress,
- Loss of educational and future career opportunities.

These harms are not hypothetical. They are a **direct result** of Plaintiff's reliance on policies that were subsequently disregarded. Unlike *Doe v. Rider Univ.* or *Doe v. Univ. of Chicago*, which involved broad fairness principles, Plaintiff here relies on **detailed procedural guarantees** found in the SRRP. As held in *Gati v. Univ. of Pittsburgh*, 91 A.3d 723 (Pa. Super. Ct. 2014), and reaffirmed by *C&K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988), courts must not dismiss estoppel claims where factual questions about promise specificity and reliance are present.

This wasn't just a constitutional due process violation—it also breached an implied promise to protect student rights under the University's own procedures. Plaintiff would not have remained at Clarion or subjected himself to their process if he had known the University would not preserve or disclose material evidence when a disciplinary investigation was launched. The

absence of the video significantly impacted his academic record, reputation, and future educational prospects—demonstrating both reliance and harm.

### II.F. ELEVENTH AMENDMENT IMMUNITY

Defendants' invocation of Eleventh Amendment immunity to shield Clarion University, the University Police, and University officials sued in their official capacities (Counts II through VIII) misapprehends the doctrine's scope, its recognized exceptions, and the controlling factual posture of this case. While the Eleventh Amendment does bar certain claims against arms of the state, it does not apply with equal force to all claims, particularly where prospective equitable relief is sought, or where individual officials act ultra vires or violate federal law.

#### II.F.1. The Ex parte Young Exception Applies

Plaintiff's claim for injunctive relief to correct his educational records squarely falls within the recognized exception articulated in *Ex parte Young*, 209 U.S. 123 (1908), and reaffirmed in *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Where a plaintiff seeks prospective injunctive relief against state officials for ongoing violations of federal law, the Eleventh Amendment does not bar the claim. See also *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001). Here, Plaintiff has requested equitable relief to correct false and incomplete educational records, stemming from disciplinary actions imposed in violation of clearly established federal rights under the Due Process Clause. These records remain active and injurious, constituting a continuing violation of federal law. Clarion's failure to follow its own hearing procedures, destruction of exculpatory evidence, and refusal to hold a University Conduct Board hearing are not historical artifacts—they are present-tense harms justifying equitable relief under *Ex parte Young*.

**II.F.2.     B. Eleventh Amendment Does Not Apply to Individual-Capacity Federal Claims**

To the extent Plaintiff asserts claims under 42 U.S.C. § 1983 against Whitney, Shaffer, and White in their individual capacities, such claims are not barred by the Eleventh Amendment. See *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits."). Even where the same conduct is at issue, the distinction between official- and individual-capacity claims is meaningful and jurisdictionally dispositive. Plaintiff's allegations against these actors include deliberate misconduct—e.g., refusing to preserve or disclose evidence, fabricating outcomes, and interfering with adjudicative processes—in excess of their authority and in violation of clearly established constitutional norms. Such conduct forfeits immunity under both the Eleventh and qualified immunity doctrines. See *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974).

**II.F.3.     Eleventh Amendment Does Not Bar Federal Claims Sounding in Constitutional Violations**

Clarion's argument, citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), overstates the reach of Eleventh Amendment immunity. While *Pennhurst* precludes federal courts from ordering state officials to comply with state law, it does not preclude relief for violations of federal law. Plaintiff's due process claims are predicated upon *Goss v. Lopez*, 419 U.S. 565 (1975), and *Monroe v. Pape*, 365 U.S. 167 (1961), which authorize § 1983 actions against state actors who deprive individuals of constitutional rights under color of state law. In dismissing Plaintiff's breach of contract, estoppel, and defamation claims under Eleventh Amendment immunity, the Court improperly interwove state common law claims with Plaintiff's

distinct constitutional claims. But where federal constitutional claims remain viable, immunity is not absolute—especially where the facts suggest ongoing violations and deliberate indifference to federally protected rights.

### II.F.4. Clarion Officials Are Not Entitled to Blanket Immunity

Even if Clarion University and PASSHE entities may, as a general rule, assert Eleventh Amendment immunity, such immunity is not self-executing and must yield where officials act ultra vires. See *Pennhurst*, 465 U.S. at 101 n.11. The Court must conduct a fact-specific inquiry into whether the officials acted within the lawful scope of their duties. Plaintiff's Second Amended Complaint alleges intentional misconduct, suppression of evidence, and manipulation of university processes—all of which fall outside the safe harbor of good-faith official conduct.

### II.F.5. Prospective Relief and the Federal Interest Override

Finally, the Third Circuit has emphasized that federal courts have an affirmative duty to vindicate constitutional rights even when state agencies are involved. See *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Plaintiff seeks relief to correct false educational records and to remedy the reputational and practical harm that continues as a result of Clarion's ongoing failure to abide by constitutional norms. Dismissing all such claims as categorically barred by Eleventh Amendment immunity strips the *Ex parte Young* doctrine of its teeth and grants state actors unchecked power to deny students fundamental rights. Accordingly, Plaintiff respectfully requests that the Court reconsider its finding of Eleventh Amendment immunity as to Counts II, III, IV, V, and VIII. Plaintiff's claims for prospective relief, his federal claims against individual actors, and his allegations of constitutional violations fall outside the scope of Eleventh

Amendment immunity. To the extent any claims remain ambiguous, Plaintiff requests leave to amend under *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

### III.                                          CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court reconsider its July 8, 2025 Memorandum Opinion and Order (ECF No. 90) pursuant to Rules 59(e) and 60(b)(1). The ruling misapprehended material facts, overlooked governing legal standards, and dismissed meritorious claims that deserve adjudication on the merits. Plaintiff has sufficiently alleged viable claims for negligence, due process violations, breach of contract, and promissory estoppel—each supported by both factual allegations and controlling case law. The Court's reliance on Eleventh Amendment immunity was likewise overbroad and inconsistent with binding precedent regarding Ex parte Young and § 1983 liability.

Plaintiff does not seek to relitigate resolved issues, but to ensure that legitimate constitutional claims and factual disputes are afforded the opportunity for evidentiary development. At minimum, Plaintiff should be granted leave to amend, as required by Third Circuit precedent, especially in light of Plaintiff's pro se status and the substantive nature of the rights at issue. Accordingly, Plaintiff asks this Court to vacate its prior dismissal, reinstate Counts II through V and VIII, and permit the case to proceed to discovery and resolution on a full and fair record.

Respectfully submitted,

s/Darold Palmore

Darold Palmore

218 Wood Street

Johnstown, PA 15902

Email:DaroldPalmore@gmail.com